**Harry B. COHEN, M.D., Appellant–Respondent,**

v.

**Ann M. COHEN, Respondent–Appellant.**

Nos. WD 58810, WD 59043, WD 59066, WD 58838.

Missouri Court of Appeals, Western District.

April 23, 2002.

James A. Kessinger and John R. Shank, Kansas City, MO, for Appellant–Respondent.

Milt Harper and Leslie Ann Schneider, Columbia, MO, for Respondent–Appellant.

Before: EDWIN H. SMITH, P.J., and HOWARD and HOLLIGER, JJ.

EDWIN H. SMITH, Presiding Judge.

Harry B. Cohen appeals the judgment of the Circuit Court of Boone County dissolving his marriage to the respondent, Ann M. Cohen, with respect to the court's division of marital property and its awards of maintenance and attorney's fees to the respondent. The respondent cross-appeals the trial court's award of maintenance.

The appellant raises four points on appeal. In Point I, he claims that the trial court erred in awarding maintenance to the respondent because in finding that she did not have sufficient property awarded to her in the dissolution to provide for her reasonable needs, as required by § 452.335.1 [1] to justify such an award, it abused its discretion in failing to consider the portion of the appellant's retirement funds awarded to her as marital property. In Point II, he claims that the trial court

1. All statutory references are to RSMo 2000, unless otherwise indicated.

erred in awarding the respondent maintenance of $800 per month, based upon the court's finding that she had reasonable monthly needs of $7,354, because the record was insufficient to support such a finding. In Point III, he claims that the trial court erred in ordering him to pay the respondent $362,500 in cash within 90 days of the entry of the judgment of dissolution to effectuate an equal distribution of marital property, specifically the parties' art business valued at $600,000, and their marital home, valued at $125,000, because it resulted in an "unfair and unequal" division of the property in favor of the respondent. In Point IV, the appellant claims that the trial court erred in awarding the respondent attorney's fees of $41,751 because in doing so, the court did not consider, as required by § 452.355, the respondent's financial resources to pay her own fees and her actions during the pendency of the dissolution proceeding in that the trial court awarded her over $1.4 million in marital property, which could have been used to pay her legal fees, and her conduct during the dissolution proceeding unnecessarily increased her attorney's fees.

The respondent raises two points in her cross-appeal. In Point I, she claims that "[t]he trial court erred in determining the amount of maintenance in its finding that the respondent's need of maintenance was the sum of $800.00 per month until she reaches the age of 59½ upon the same shall end because the evidence presented indicated that wife's income, including earned income and interest income was insufficient to meet her monthly expenses and that there was insufficient evidence to support a finding that the marital property awarded to Wife would be producing sufficient income to pay Wife's reasonable expenses and Wife was in need of an award of maintenance exceeding $800.00 per month." In Point II, she claims that the trial court erred in ordering its maintenance award to her to terminate when she reaches the age of 59½ because there was no substantial evidence of an impending change in the financial circumstances of the parties to justify its termination.

Affirmed in part; reversed in part and remanded.

### Facts

The parties were married on February 17, 1973. At the time of the marriage, the appellant was in his third year of medical school and the respondent was in her first semester of graduate school working towards a master's degree in nutrition. After the parties' marriage, the appellant graduated from medical school and became a practicing anesthesiologist, while the respondent earned her master's degree and worked part time as a registered dietician. During the course of the marriage, the parties founded and operated the Harco Art Gallery. Three children were born of the marriage: Louis, born September 4, 1974; David, born January 24, 1977; and Elizabeth, born March 7, 1987. The parties separated on or about May 20, 1999.

On May 24, 1999, the appellant filed a petition in the Circuit Court of Boone County, seeking to dissolve the marriage of the parties. In his petition, he requested, *inter alia*, that the circuit court: dissolve the marriage; divide the parties' property and debts; award the parties joint legal and physical custody of the one minor child, Elizabeth, with the appellant to have primary physical custody; and order child support to be paid in accordance with Rule 88.01[2] and Form 14. On June

**2.** All rule references are to the Missouri Rules of Civil Procedure (2001), unless otherwise indicated.

22, 1999, the respondent filed her answer to the appellant's petition and her counter-petition. In her counter-petition, the respondent, *inter alia*, prayed for an award of maintenance; attorney's fees and costs; and sole custody of the minor child. The appellant filed an answer to the respondent's counter-petition on June 28, 1999.

On September 1, 1999, the respondent filed a motion for temporary child support, maintenance and attorney's fees; and exclusive possession of the marital home. The respondent also requested a temporary restraining order against the appellant, restraining him from transferring or disposing of any marital property. On September 9, 1999, the trial court awarded the respondent temporary physical custody of Elizabeth, temporary child support of $1,769 per month; and temporary maintenance of $2,000 per month. While not granting the respondent exclusive possession of the marital home, the court did order that the appellant's access was to be limited and that he was to make the monthly mortgage payments and pay the monthly utilities. The respondent was also awarded suit money of $8,751 for attorney's fees and $2,000 for expert witness's fees. On January 18, 2000, the respondent filed a motion for additional fees and expenses, which the court sustained on February 8, 2000, awarding her $5,000 in additional attorney's fees.

The parties' case was heard on April 4–5, 2000. The trial court took the matter under advisement and entered its judgment dissolving the marriage on May 25, 2000. In its judgment dissolving the marriage, the trial court awarded the respondent sole physical custody of the minor child, with joint legal custody to the parties and child support of $1,856 per month to the respondent. The court also awarded the respondent non-modifiable, terminable maintenance of $800 per month and additional attorney's fees of $15,000, and divided the marital property and debts.

On June 22, 2000, the appellant filed a motion for new trial or, in the alternative, to reopen the evidence and amend or modify the trial court's judgment. The respondent filed a motion to amend the trial court's judgment on June 23, 2000, and a first amended motion to amend the judgment on June 29, 2000. After a hearing on July 6, 2000, the trial court overruled the motions of the respective parties.

This appeal follows.

### I.

In Point I, the appellant claims that the trial court erred in awarding maintenance to the respondent of $800 per month because in finding that she did not have sufficient property awarded to her in the dissolution to provide for her reasonable needs, as required by § 452.335.1 to justify such an award, it abused its discretion in failing to consider the portion of the appellant's retirement funds awarded to her as marital property. Specifically, he claims that from the evidence it was undisputed that the portion of his retirement funds awarded to the respondent as marital property was readily available to her such that it could produce annual income sufficient to pay, in whole or in part, her reasonable expenses, without depleting the principal amount of the funds that were awarded to her.

"An award of maintenance is a matter resting within the sole discretion of the trial court." *Shelton v. Shelton*, 29 S.W.3d 400, 403 (Mo.App.2000) (citation omitted). When reviewing such an award, our inquiry is limited to determining whether the trial court abused its discretion. *Id.* If reasonable minds can differ as to the propriety of the action taken by the trial court, then it cannot be said that the

court abused its discretion. *Stangeland v. Stangeland*, 33 S.W.3d 696, 700 (Mo.App. 2000). We will find an abuse of discretion as to an award of maintenance only where the award shocks our sense of justice. *Coble v. Coble*, 931 S.W.2d 206, 210 (Mo. App.1996). When determining whether the trial court abused its discretion in awarding maintenance, we will review the evidence "in a light favorable to the decree, disregarding evidence to the contrary and deferring to the trial court even if the evidence could support a different conclusion." *Keller v. Keller*, 18 S.W.3d 589, 593 (Mo.App.2000) (citations omitted).

Section 452.335, which governs an award of maintenance, provides a two-part threshold test for determining the propriety of such an award. *McIntosh v. McIntosh*, 41 S.W.3d 60, 67 (Mo.App.2001). It reads:

1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

§ 452.335.1. Under the first part of the test, the spouse seeking maintenance must show that he or she lacks sufficient property to provide for all of his or her reasonable needs. *Childers v. Childers*, 26 S.W.3d 851, 854 (Mo.App.2000). It is this first part of the test that the appellant contends that the respondent did not satisfy.

In satisfying the first part of the threshold test for an award of maintenance, the spouse seeking an award is not required to deplete the marital assets awarded to him or her. *Burnett v. Burnett*, 18 S.W.3d 27, 30 (Mo.App.2000). However, any investment income from the property awarded is to be considered in determining whether the spouse has sufficient property to provide for his or her reasonable needs because a spouse is not entitled to build an estate or accumulate capital through maintenance. *Allen v. Allen*, 927 S.W.2d 881, 888 (Mo.App.1996). In requiring that the trial court consider the "marital property apportioned" to the spouse in deciding the sufficiency of the spouse's property to provide for his or her reasonable needs, § 452.335.1(1) "reflects the general principle that investment income must be considered, so that maintenance is not awarded for the purposes of building an estate or accumulation of capital," *Hill v. Hill*, 53 S.W.3d 114, 116 (Mo. banc 2001), but for the recognized purpose of assisting a spouse who is unable to be self-supporting. *Shelton*, 29 S.W.3d at 404.

In support of his claim in this point, the appellant contends that the evidence was undisputed that the respondent could avail herself of certain provisions of the Internal Revenue Code (IRC) to immediately restructure the portion of the appellant's retirement funds awarded to her without penalty and without depleting the funds awarded so as to earn annual income thereon of $70,000, which would be more than enough to meet her reasonable needs, as found by the trial court. From this, the appellant contends that the trial court was required to consider this income from the retirement accounts when it determined whether the respondent was entitled to

maintenance. The record reflects, however, that the trial court, in determining that the respondent was entitled to an award of maintenance, found that the retirement funds awarded to her were not income-producing in that they were not readily available to her inasmuch as withdrawals prior to the respondent reaching age 59½ would result in penalties and added taxes and would deplete the principal of the funds. Thus, in determining whether the trial court erred in its award of maintenance to the respondent, as the appellant claims in this point, we are required to address the issue of whether the portion of the appellant's retirement funds awarded to the respondent as marital property was income-producing such that the court should have imputed income to her on that basis in determining whether she could meet her reasonable needs without an award of maintenance.

In *Witt v. Witt,* 930 S.W.2d 500, 503 (Mo.App.1996), this court addressed the issue of whether the trial court erred in denying the wife maintenance because it found that the IRAs awarded to her as marital property were income-producing, which income could be used to meet her day-to-day expenses. Finding that the IRAs in question were not "readily available" to the wife to pay her day-to-day living expenses, the *Witt* court reversed the trial court's denial of maintenance to the wife and remanded the cause for a determination of a reasonable award of maintenance. *Id.* In finding that the IRAs were not "readily available" to the wife, the court relied on the well-settled proposition that a "spouse is not required to deplete his or her portion of marital assets for living expenses before being entitled to maintenance" and the fact that she would not be able to make withdrawals from the accounts before she reached the age 59½ without being penalized and taxed. *Id.*

In *Shook v. Shook,* 997 S.W.2d 103, 107–08 (Mo.App.1999), the Southern District of this court was forced to deal with the same issue that we addressed in *Witt.* In *Shook,* the court held, in awarding maintenance, that the trial court "is required to" impute income that a spouse may receive from a retirement account, without any consideration for the fact that an early withdrawal from such an account often triggers the payment of substantial penalties and taxes. In this regard, *Shook* would appear to be at odds with *Witt.*

While this appeal was pending, the Missouri Supreme Court decided *Hill.* There, in addressing the issue of when income should be imputed from IRA and retirement accounts for purposes of determining maintenance, the court discussed the holdings in both *Witt* and *Shook. Hill,* 53 S.W.3d at 115–16. As to *Witt,* the court held that with respect to determining the propriety of an award of maintenance, *Witt* and its progeny should not be interpreted as flatly prohibiting consideration of IRA and retirement accounts as income-producing simply because early withdrawals therefrom would result in penalties and taxes. As to *Shook,* the court found that the "*Shook* requirement [that income has to be imputed regardless of the circumstances] ... contradicts the principle that a spouse is not required to consume his or her apportioned share of marital property before receiving maintenance." *Id.* at 116. Thus, the Court held that "*Shook* and similar cases should not be followed to the extent they require imputing income from retirement and IRA accounts in every case." *Id.* (citations omitted). In contrast to the perceived polar positions of *Witt* and *Shook,* concerning when to impute income from IRA and retirement accounts in determining the propriety of an award of maintenance, the Supreme Court in *Hill* set forth a test that attempts to harmonize the competing principles that while a party

is not required to deplete his or her marital assets before being entitled to maintenance, maintenance should not allow a party to build an estate or accumulate wealth. That test is as follows:

In sum, when calculating maintenance, a trial court must consider the income from retirement and IRA accounts to be apportioned as marital property. The trial court determines the amount of income—if any—imputed from these accounts based on the facts and circumstances of each case—including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties.

*Id.* This then is the test we must apply here.

As noted, *supra*, it is undisputed that in determining whether the respondent was entitled to maintenance, the trial court did not impute any income to the respondent from the portion of the appellant's retirement accounts awarded to her as martial property. In that regard, in its judgment, the trial court found that the portion of the two retirement accounts awarded to the respondent "[could not] be used by [her], without penalty, depletion, and additional tax until she is age 59½ and therefore she has *no current income producing ability* from these two accounts." (Emphasis added.) From the trial court's finding, it appears that the court was applying § 452.335.1(1), as interpreted in *Witt*, that in every case of penalty or tax and depletion, property is not income-producing, which interpretation the Court in *Hill* rejected. Hence, the trial court erroneously declared and applied the law in awarding maintenance to the respondent. And, not surprisingly, inasmuch as the trial in our case occurred before *Hill* was decided, the record is insufficient for the *Hill* factors to be applied by us to determine, with any reasonable certainty, whether the portion of the appellant's retirement accounts awarded to the respondent were income-producing and, if so, whether any amount should be imputed therefrom, requiring us to reverse the award of maintenance to the respondent and remand to the trial court for further proceedings to develop the record and then rule on the appropriateness of a maintenance award to the respondent, applying the *Hill* factors. *See Fischer v. Fischer*, 66 S.W.3d 43, 45 (Mo.App.2001).

## II.

In Point II, the appellant claims that the trial court erred in awarding the respondent maintenance of $800 per month, based upon the court's finding that she had reasonable monthly needs of $7,354, because the record was insufficient to support such a finding. Specifically, the appellant claims that the trial court's calculation of the respondent's reasonable needs for purposes of maintenance was improper in that it included expenses for charitable contributions that were not made during the course of the marriage, expenses that already had been included in the court's Form 14 calculation of child support, housing expenses that did not exist, and an inflated automobile expense of $750 per month. In addition, the appellant also challenges the inclusion in the court's maintenance award of $102 for day-to-day contingency expenses. While we have already determined that the trial court's award of maintenance must be reversed in Point I and the issue remanded to the court for further proceedings, because the issue raised in this point is likely to be raised on remand, we will address it. Our review in this point is the same as that employed in Point I.

■ As discussed in Point I, in determining whether to award maintenance, the two-part threshold test of § 452.335.1 must be satisfied. § 452.335.1; *Childers*, 26 S.W.3d at 854. Under the test, the court must first determine that the spouse seeking maintenance does not have sufficient property, including marital property awarded in the dissolution, to provide for his or her reasonable needs. *Childers*, 26 S.W.3d at 854. If the first part of the test is met, then the trial court must determine whether the spouse's reasonable needs can be met through appropriate employment. *Id.* Thus, under the procedure envisioned by § 452.335.1, the trial court, in determining the appropriateness of an award of maintenance, must first find the amount of the reasonable needs of the party seeking maintenance. *McIntosh*, 41 S.W.3d at 67–68.

■ As to the reasonable expenses the respondent was claiming in support of her request for maintenance, she not only had the burden of proving at trial that they were expenses properly included in the court's determination of such an award, but the burden of proving the amount of those expenses. *Brooks v. Brooks*, 957 S.W.2d 783, 787–88 (Mo.App.1997). To carry her burden at trial of proving her reasonable needs, the respondent offered her third amended income and expense statement, which was admitted. Such statements can serve as substantial evidence to support a finding of reasonable needs or expenses. *Brooks*, 957 S.W.2d at 788 (*citing M.A.Z. v. F.J.Z.*, 943 S.W.2d 781, 790 (Mo.App.1997)).

In her expense statement, the respondent claimed monthly expenses of $7,354, which amount the trial court found in its judgment as her reasonable needs. Using that figure, the trial court calculated the award of maintenance to the respondent as follows:

*CALCULATION OF MAINTENANCE FOR RESPONDENT*

| | |
|---|---|
| $7,354. | Need from [Respondent's Income and Expense Statement] |
| – $1,500. | less house payment—pay from property distributed |
| – $ 750. | [less] Car Payment—pay from property distributed |
| $5,104. | real need |
| – $1,750. | Gross [employment] earning 10/1/00 @ 21,000 |
| – $ 800. | Balance of cash transferred earn minimum of $800. [interest] |
| – $1,856. | Child support |
| $ 698. | Need not met |
| $ 800. | Maintenance |
| (102.) | excess income (contingencies) |

In challenging the trial court's finding as to the respondent's reasonable expenses, the appellant claims that it was error to include: (1) $350 for charitable donations; (2) $754 in child expenses that were also included in the court's calculation of child support; (3) $1,750 in housing expenses; and (4) $750 for the purchase of an automobile. We will address each of these expenses separately and then the issue of whether the award for $102 for contingency expenses was justified.

### A. Charitable Contributions

■ The appellant first contends that the trial court erred in finding that the respondent's reasonable expenses included $350 per month for "church and charitable contributions," as claimed by her in her expense statement. It is well settled in the law that "[m]odest charitable contributions which were made throughout the course of the marriage may be included when figuring the reasonable expenses of the party seeking maintenance." *Childers*, 26 S.W.3d at 856. The appellant contends that the $350 should not have been allowed as a reasonable expense because there is nothing in the record indicating that she made such contributions during the course of the marriage. We agree.

In support of her claimed expense of $350 for church and charitable contribu-

tions, the respondent relies on her expense statement and her trial testimony that she had been tithing to her church since August 1999. At trial, the respondent testified that the $350 in charitable giving commenced when the parties had separated and were pursuing the dissolution of their marriage. As such, this did not constitute substantial evidence of charitable giving during the course of the marriage. Hence, the trial court erred in awarding maintenance to the respondent based upon a finding of reasonable expenses including that amount. *Id.*

### B. Expenses Already Included in Child Support Calculation

The appellant also claims in this point that the trial court erred in finding that the respondent's reasonable expenses included expenses for the minor child in her custody because those expenses had already been included in the court's child support calculation. Specifically, the appellant challenges the inclusion of the respondent's claimed expenses of $260 for "camps and other special events"; $198 for "lessons/continuing education"; $276 for "school/books"; and $20 for "unreimbursed medical care and prescription drugs," which expenses totaled $754.

It is well settled that maintenance awards, as provided in Section 452.335, are limited to the needs of the spouse requesting support. *Nichols v. Nichols*, 14 S.W.3d 630, 637 (Mo.App. 2000). Section 452.335 speaks "solely in terms of whether the requesting party lacks sufficient property to meet 'his' reasonable needs, and whether that party is able to support 'himself' through appropriate employment." *Id.* Thus, in determining the need for maintenance, the trial court is not to consider any amounts expended for the direct care and support of a dependent child. *Id.*

As noted, *supra,* the trial court, in determining its award of maintenance, found that the respondent had reasonable expenses of $7,354, the exact amount claimed by the respondent in her expense statement. Included in that amount was "other living expenses" of $1,734 for the "children in [respondent's] custody," which included the $754 challenged by the appellant in this point. Thus, it would appear that the trial court not only erred to the extent it included in the respondent's reasonable expenses the $754 in child expenses challenged by the appellant in this point, but also erred in including an additional amount of $980 for such expenses.

While there is no question that it was improper for the trial court to include in its reasonable needs finding child expenses claimed by the respondent, which were included in the court's child support calculation, *id.,* in an apparent attempt to offset this inclusion of expenses, the court, in determining the respondent's financial means to pay those expenses, took into consideration the child support award to her of $1,856. The problem with this mathematical manipulation is that the respondent's claimed child expenses were $122 less than the child support awarded. Thus, the net effect of including the child expenses and then subtracting the child support arguably shorted the respondent of $122 in maintenance. In any event, it is clear from the record that in calculating its award of maintenance, the trial court improperly considered the expenses claimed for the benefit of the minor child in the respondent's custody and the child support awarded to her. *Crawford v. Crawford,* 986 S.W.2d 525, 529 (Mo.App.1999).

### C. Household and Automobile Expenses

The appellant next claims in this point that the respondent's reasonable ex-

penses were inflated by the trial court in that they included $250 for maintaining the marital residence, which was awarded to the appellant; $750 for a new automobile; and $1,500 for the mortgage payment for the marital residence that she did not have. Specifically, he claims that the record did not support the inclusion of these expenses in the respondent's reasonable expenses for purposes of calculating maintenance.

As to the respondent's claim in her expense statement for $750 for the purchase of a new automobile and $1,500 for a monthly mortgage payment, the record reflects that the trial court's finding as to reasonable needs did not include these amounts, as the appellant contends. Hence, the appellant's claim that these expenses were improperly included in the trial court's calculation of maintenance is without merit.

■■■ As to the $250 claimed for maintaining the marital home, the respondent's expense statement reflects that this figure included $90 for a housekeeper and $125 for lawn service. The respondent testified at trial that these figures were based on expenses incurred with respect to the parties' marital residence, which was awarded to the appellant. Inasmuch as the respondent was unsure as to what her living arrangements would be in the future, there was nothing in the record to indicate whether she would have comparable household expenses at her new home. As such, there was no substantial evidence supporting the inclusion by the trial court, in its reasonable needs finding, the $250 claimed by the respondent in her expense

statement for home maintenance expenses, such that the trial court erred in calculating its maintenance award based upon a consideration of the same.[3]

### D. Day–to–Day Contingency Expenses

■■■ The appellant also claims in his point relied on that the trial court erred in awarding the respondent maintenance that was over and above the difference it found between her reasonable expenses and her ability to meet those expenses. Specifically, the appellant challenges the fact that the trial court's monthly maintenance award of $800 included $102 for day-to-day contingency expenses, the court having found that her real need was only $698. Although raised in his point relied on, the appellant fails to develop any argument as to why it was error for the trial court to include the $102 in its maintenance award. Any claim of error raised in a point relied on which is not addressed in the appellant's argument is deemed waived.[4] *Coleman v. Gilyard,* 969 S.W.2d 271, 273 (Mo. App.1998).

In summary of this point, in awarding maintenance to the respondent, the trial court erred in including in its calculation reasonable expenses for charitable donations of $250, $1,734 in expenses for the minor child, Elizabeth, and household expenses of $250, requiring reversal of the court's maintenance award.

### III.

In Point III, the appellant claims that the trial court erred in ordering him to pay the respondent $362,500 in cash within 90

---

3. This ruling would not preclude the respondent, on remand of the maintenance award, from introducing evidence sufficient to demonstrate that she would incur similar expenses at her new residence.

4. An award of maintenance may include "a reasonable amount above the itemized expenses of the party seeking maintenance to meet unexpected day-to-day expenses which, given their nature, may be reasonable under the circumstances, yet are incapable of specific itemization." *Childers,* 26 S.W.3d at 856.

days of the entry of the judgment of dissolution to effectuate an equal distribution of marital property, specifically the parties' art business valued at $600,000, and their marital home, valued at $125,000, because it resulted in an "unfair and unequal" division of the property in favor of the respondent. Specifically, the appellant claims that in valuing the marital property and determining what was a fair and equitable division thereof, the trial court was required, but failed, to consider that the equalization payment it ordered him to make to the respondent would effectively require him to immediately sell the art business and marital home, with him to bear "all the tax consequences, costs of sale and risks of market fluctuations" associated therewith, such that the actual value of the marital property received by him would be substantially less than the values assigned to the property by the court so as to result in an unintended and disproportionate distribution of the marital estate.

We will affirm the trial court's distribution of marital property, unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Davis v. Davis,* 50 S.W.3d 308, 310 (Mo.App.2001); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "We will affirm the trial court's decision as long as the division of property is not so unduly weighted in favor of one party so as to constitute an abuse of discretion." *Davis,* 50 S.W.3d at 310 (*citing Silcox v. Silcox,* 6 S.W.3d 899, 904–05 (Mo. banc 1999)). An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration. *Id.* If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused

its discretion. *In re Marriage of Medlock,* 990 S.W.2d 186, 189 (Mo.App.1999).

Section 452.330, which governs the division of property in a dissolution proceeding, sets forth a two-step process that is to be followed by the trial court: (1) the court must first set aside to each spouse his or her non-marital property; and (2) then divide the marital property and debts in such proportions as the court deems just. *Bauer v. Bauer,* 38 S.W.3d 449, 458 (Mo.App.2001). The trial court is granted great flexibility and discretion in its division of property pursuant to § 452.330. *Myers v. Myers,* 47 S.W.3d 403, 407 (Mo.App.2001). We presume that the trial court's division of property is correct, and the party challenging the division bears the burden of overcoming this presumption. *Rivers v. Rivers,* 21 S.W.3d 117, 123 (Mo.App.2000).

" 'The division of marital property need not be equal, but must only be fair and equitable given the circumstances of the case.' " *Shepard v. Shepard,* 47 S.W.3d 412, 417 (Mo.App.2001) (*quoting Nelson v. Nelson,* 25 S.W.3d 511, 517 (Mo. App.2000)). A trial court's award of a higher percentage of marital assets to one party does not *per se* constitute an abuse of the court's discretion. *Nelson,* 25 S.W.3d at 517. In fact, this court has often affirmed disproportionate divisions of marital property. *Id.*

When dividing marital property, the trial court is required to consider all relevant factors, including: (1) the economic circumstances of each spouse at the time of the property division and the desirability of awarding the family home to the custodial parent; (2) the contribution of each spouse to the acquisition of property; (3) the value of each spouse's non-marital property; (4) the conduct of the parties during the marriage; and (5) the custodial

arrangements for the minor children. § 452.330.1. These statutory factors are not exclusive, and there is no precise formula determining the weight to be given the relevant factors, which a court may consider. *Taylor v. Taylor*, 25 S.W.3d 634, 640 (Mo.App.2000). There are two guiding principles, however, that must be followed in dividing marital property pursuant to § 452.330: (1) that property division should reflect the concept of marriage as a shared enterprise similar to a partnership; and (2) that property division should be utilized as a means of providing future support for an economically dependent spouse. *In re Marriage of Gibson*, 23 S.W.3d 686, 689–90 (Mo.App.2000).

 In distributing the marital property of the parties, the trial court awarded the appellant the parties' art business, Harco Art Gallery, valued by stipulation of the parties at $600,000, and the marital home, which neither party wanted, valued by the court at $125,000. The art business consisted of its inventory, 570 pieces of art, and approximately $94,000 in cash on hand. In an apparent attempt to divide these assets equally between the parties, the trial court ordered the appellant to pay the respondent $362,500 in cash within 90 days of the entry of the judgment, which represented a one-half interest in both the art business and marital home. The appellant contends that this was an abuse of discretion in that it failed to consider the costs, taxes and risks of the market associated with the sale of the artwork and the home, which he contends was contemplated by the trial court to provide him with the means to satisfy the cash payment ordered paid to the respondent. In other words, he is contending that while the respondent would receive $362,500 for her half of the business and the marital home, he would receive substantially less given the likelihood that he would not receive the value assigned by the court for these assets, the forced sale situation, and the costs and tax consequences associated with such a sale.

 It is well settled that a trial court may order one spouse in a dissolution action to make a cash payment to the other to effectuate a just and fair division of marital property where it is impossible or imprudent to divide the property in kind. *Reeves v. Reeves*, 904 S.W.2d 412, 413 (Mo.App.1995). In order to effectuate its distribution of property, a trial court possesses the power to order the sale of marital property. *Baldwin v. Baldwin*, 905 S.W.2d 521, 523 (Mo.App.1995). "There are two general conditions that are sought before a court orders a sale: (1) a finding that the property cannot be divided in kind, and (2) a finding that a sale would be in the best interest of one or both of the parties." *Id.* (citation omitted).

The respondent has no quarrel with the fact that where the trial court orders the sale of marital property in a dissolution proceeding, the court should consider the tax consequences and costs associated with the sale in effectuating a fair and equitable division of property. However, she contends that in our case the trial court neither ordered the sale of the property in question nor contemplated that the appellant would be forced to sell them in order to satisfy the court-ordered cash equalization payment to the respondent. We would agree. The record reflects that the trial court found that given the overall financial situation of the appellant, post-dissolution, the $94,000 in cash that the art business had on hand, the expertise that the appellant possessed in selling artwork, and the sales history of the business, he would be able to realize sufficient sales proceeds that would allow him not only to pay the $300,000 equalization payment to the respondent for her share of the art

business, but to pay the $62,500 equalization payment for her share of the marital home. The appellant does not challenge the sufficiency of the evidence to support the trial court's finding.

 As to the artwork, as a further basis for denying the appellant's claim of error in this point, the respondent points to the fact that there is nothing in the record to suggest what tax consequences the appellant would experience in a forced sale situation of the art. We would agree. Where a party fails to present evidence on the tax consequences to him or her associated with the contemplated sale by the trial court of property awarded in a dissolution proceeding, that party cannot complain for the first time on appeal that the trial court failed to consider such consequences. *Keller v. Keller*, 877 S.W.2d 192, 196 (Mo.App.1994); *Theilen v. Theilen*, 847 S.W.2d 116, 124 (Mo.App.1992).

 As to the marital home, the record reflects that although the trial court did not order and contemplate the sale of the home to enable the appellant to pay the marital property equity payment to the respondent, in valuing the property, it did address the appellant's concerns about the actual value to him if he chose to sell. In that regard, the record reflects that in valuing the home, the trial court discounted its value based on the costs for making the needed repairs to make it market ready and the projected 8% real estate commission that would have to be paid. As to the value of the home, the court found:

> The real estate has a value of $225,000.00 minus the debt of $89,018.00 leaves an equity value of $135,982.00. The house has not been properly maintained, is of unpopular design, has sewage system problems, thus a sale may produce 8% less, including commissions for a true value of $125,000.00.

For the reasons stated, we cannot say that the trial court erred in its award of marital property, as the appellant claims.

Point denied.

## IV.

In Point IV, the appellant claims that the trial court erred in awarding the respondent attorney's fees of $41,751 because in doing so, the court did not consider, as required by § 452.355, respondent's financial resources to pay her own fees and her actions during the pendency of the dissolution proceeding in that the trial court awarded her over $1.4 million in marital property, which could have been used to pay her legal fees, and her conduct during the dissolution proceeding unnecessarily increased her attorney's fees. We disagree.

 Missouri courts typically follow the "American rule" with regard to awards of attorney's fees and costs which provides that each litigant should bear his or her own litigation expenses. *Laubinger v. Laubinger*, 5 S.W.3d 166, 181 (Mo.App. 1999). "However, a trial court may order one party to pay the other's attorney's fees and costs where such is authorized by statute." *Id.* (citation omitted). In that regard, § 452.355.1 provides:

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commence-

ment of the proceeding and after entry of a final judgment.

While this section allows a trial court to award attorney's fees in a dissolution proceeding, it does not require it. *In re Marriage of Baker*, 986 S.W.2d 950, 958 (Mo.App.1999) (citation omitted).

" 'The trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate.' " *Bauer*, 38 S.W.3d at 457 (*quoting Taylor*, 25 S.W.3d at 649). The trial court's decision as to a request for award of attorney's fees is presumptively correct. *Adams v. Adams*, 51 S.W.3d 541, 549 (Mo.App.2001). This court will not reverse a trial court's decision as to an award or denial of attorney's fees pursuant to § 452.355, unless we find that the court abused its discretion. *Bauer*, 38 S.W.3d at 457 (citation omitted). In order to show an abuse of discretion, "the complaining party must show that the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice." *Id.*

We first address the respondent's contention that the trial court only ordered the appellant to pay $39,751 in attorney's fees, not the $41,751 claimed by the appellant in his reply brief. In that regard, the record would reflect that the trial court did, in fact, award attorney's fees of $39,751. The apparent confusion arises from the fact that the appellant was also ordered to pay $2,000 in expert witness fees incurred by the respondent.

The appellant first claims in this point that the trial court's award of attorney's fees to the respondent was error because in entering its award, it could not have considered the respondent's financial resources to pay her own attorney's fees, as required by § 452.355, in that she was awarded over $1.4 million in marital prop-

erty, including $362,500 in cash, which was clearly sufficient to pay her fees. If we were to look only at the respondent's resources to pay her attorney's fees, we might be persuaded by the appellant's argument. However, in contending as he does, the appellant misconstrues the law.

Section 452.355 requires the court to look at *both* parties' financial resources in determining the reasonableness of an award of attorney's fees. Thus, the fact that a spouse has the means to pay his or her attorney's fees does not preclude an award for payment of the same. *McGowan v. McGowan*, 43 S.W.3d 857, 870 (Mo. App.2001); *Bauer*, 38 S.W.3d at 458. "One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *McNair v. McNair*, 987 S.W.2d 4, 8 (Mo.App.1998). Applying that standard here, there is no question that the appellant had a far greater ability to pay attorney's fees than the respondent. In that regard, the record reflects that the appellant not only received one-half of the marital property, but that he had annual income of $244,553 from 1994 to 1998, while the respondent's average annual income during this same period of time was only $16,380.60. And, given the fact that the appellant is an anesthesiologist, while the respondent is employed as a dietician, this large disparity in income is likely to continue. This disparity in income and future earnings capacity was a sufficient basis for the trial court's award of attorney's fees and as such, there is nothing to suggest that the court did not consider the respondent's financial resources when making its award. *Id.; In re Marriage of Gibson*, 23 S.W.3d at 692.

The appellant also claims in this point that the trial court erred in awarding the respondent attorney's fees because it

failed to consider her conduct during the pendency of the dissolution that led to her incurring unnecessary fees. Specifically, he contends that her refusal to file a joint income tax return, in order to cause him to pay more in taxes; her failure to comply with discovery and subpoena requests; and her withholding of information from and denial of access to the court-appointed appraiser concerning the appraisal of the parties' artwork, required court intervention and an increase in attorney's fees. This claim is without merit.

■ Section 452.355.1 recognizes that the merit of a party's positions on issues raised at trial and his or her conduct during the pendency of the dissolution proceeding with respect to those positions are to be considered in making an award of attorney's fees. *Taylor v. Taylor*, 12 S.W.3d 340, 348 (Mo.App.2000). Obviously, the rationale for this is that one spouse, anticipating an award of attorney's fees, should not be allowed to unnecessarily incur attorney's fees in an attempt to punish the other spouse. Here, even if we accept as true the assertions of the appellant concerning the respondent's actions resulting in her incurring unnecessary attorney's fees, the record would reflect a counter-balancing consideration with respect to the appellant's conduct during the proceeding. In that regard, there was evidence at trial that the appellant attempted to manipulate the family evaluation conducted by Dr. A.E. Daniel, M.D., a child psychiatrist appointed by the court, by trying to persuade him that the respondent was mentally disturbed, which resulted in considerable litigation time being spent to refute the appellant's allegations. Ultimately, Dr. Daniel testified that he found no basis for the appellant's claims as to the respondent's mental health. There was also evidence that the appellant did not provide the respondent with timely discovery concerning the inventory of artwork owned by Harco Art Gallery, which caused the respondent to expend considerable time and money in taking depositions in order to determine the extent and value of the artwork.

For the reasons stated, we find no basis for rebutting the presumption that the trial court properly considered all relevant factors in entering its award of attorney's fees such that the appellant's claim of error in this point is without merit.

Point denied.

## Respondent's Cross–Appeal
### V.

■ In Point I of her cross-appeal, the respondent claims:

The trial court erred in determining the amount of maintenance in its finding that the respondent's need of maintenance was the sum of $800.00 per month until she reaches the age of 59½ upon the same shall end because the evidence presented indicated that wife's income, including earned income and interest income was insufficient to meet her monthly expenses and that there was insufficient evidence to support a finding that the marital property awarded to Wife would be producing sufficient income to pay Wife's reasonable expenses and Wife was in need of an award of maintenance exceeding $800.00 per month.

The respondent's point on cross-appeal does not comply with Rule 84.04(d) so as to preserve a claim of error for our review.

■ Rule 84.04(d), which sets forth the requirements for a valid point relied on, provides:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

" 'Thus, the rule requires that each point relied on: (1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.' " *Wilson v. Carnahan,* 25 S.W.3d 664, 666 (Mo.App.2000) (*quoting Hall v. Mo. Bd. of Prob. and Parole,* 10 S.W.3d 540, 543 (Mo.App.1999)). " 'The function of this rule is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review.' " *Id.* "Rule 84.04(d) 'sets forth a form for a point relied on that satisfies the [rule's] requirements.' " *Id.* (*quoting In re Marriage of Wright,* 990 S.W.2d 703, 708 (Mo.App.1999)).

▪ The respondent's point relied on fails to sufficiently "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error," as required by Rule 84.04(d)(1)(C). As such, it is nothing more than an abstract statement of law, which fails to satisfy the requirements of Rule

84.04(d). Rule 84.04(d)(4). Where a point relied on sets out a mere abstract statement of law and does not explain why the legal reason or reasons asserted support the claim of reversible error, it is deficient and preserves nothing for appeal. Rule 84.04(d)(4); *Crawford County Concerned Citizens v. Mo. Dept. of Natural Res.,* 51 S.W.3d 904, 908 (Mo.App.2001).

▪ It is well settled that:

[c]ompliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. Deficient points relied on force the appellate court to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or his opponent understood.

*Franklin v. Ventura,* 32 S.W.3d 801, 803 (Mo.App.2000) (*quoting Myrick v. E. Broad., Inc.,* 970 S.W.2d 885, 886 (Mo.App.1998) (citations omitted)). " 'It is not the function of the appellate court to serve as advocate for any party to an appeal.' " *Shochet v. Allen,* 987 S.W.2d 516, 518 (Mo.App.1999) (quoting *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978)). "As such, we have no duty to search the transcript or record to discover the facts which substantiate a point on appeal." *Wilson,* 25 S.W.3d at 667. " 'That is the duty of the parties, not the function of an appellate court.' " *Id.* (*quoting Nell v. Fern–Thatcher Co.,* 952 S.W.2d 749, 755 (Mo.App.1997) (citation omitted)).

Because the respondent's point fails to substantially comply with Rule 84.04(d), it preserves nothing for our review, requir-

ing its dismissal. *Franklin*, 32 S.W.3d at 804 (citations omitted).[5]

Point dismissed.

## VI.

■■■ In Point II of her cross-appeal, the respondent claims that the trial court erred in ordering its maintenance award to her to terminate when she reaches the age of 59½ because there was no substantial evidence of an impending change in the financial circumstances of the parties to justify its termination. Given our disposition of Points I and II, *supra*, there is the possibility that this issue may prove to be moot. However, there is some likelihood that it might still arise on remand of the issue of maintenance.

■■■■ " 'In regard to the duration of the trial court's maintenance award, a maintenance award of limited duration 'is justified only where substantial evidence exists of an impending change in the financial condition of the parties.' " *Burnett*, 18 S.W.3d at 32 (*quoting Allen v. Allen*, 961 S.W.2d 891, 896 (Mo.App.1998)). Courts have a preference for maintenance awards of unlimited duration. *Id.* " 'Maintenance should not be prospectively terminated if there is no evidence or reasonable expectation that the circumstances of the parties will be markedly different in the future.' " *Id.* (*quoting Hicks v. Hicks*, 859 S.W.2d 842, 847 (Mo.App.1993)).

Although the trial court made no express findings as to why it was making its maintenance award to the respondent terminable upon her reaching age 59½, the only arguable circumstance that would support such termination is, as contended by the appellant, that at that age she would be able to withdraw sufficient funds from the retirement funds awarded to her as marital property to meet her reasonable needs at that time. However, for this to be a proper basis for terminating its award of maintenance to the respondent, there had to be substantial evidence before the trial court that this event was sufficiently certain to occur. As the respondent contends, there is no such evidence in the record.

In *Anderson v. Anderson*, 5 S.W.3d 535, 536 (Mo.App.1999), this court addressed the issue of whether the fact that a spouse's reaching the age at which she could withdraw, without penalty, funds from a stock-investment retirement plan justified the future termination of a maintenance award. In reversing the trial court's terminable award of maintenance as not being supported by the evidence, the court recognized that stock investments are, by their very nature, subject to day-to-day fluctuations in value, such that it was highly speculative for the court to conclude that the spouse's reasonable needs would be met by the funds that would be available from such accounts at a future date. *Id.* The same can be said here.

■■■ Where, as here, there is no substantial evidence of an impending change in the financial circumstances of the parties in the future, the trial court should not limit the duration of the maintenance and should order the maintenance modifiable. *Friedman v. Friedman*, 965 S.W.2d 319, 324 (Mo.App.1998). Thus, on remand of the trial court's award of maintenance, the court should not limit the duration of any award simply on the basis discussed in this point.

---

5. Although we decline review of this point, given our reversal of the maintenance award on other grounds, the trial court, in determining what maintenance, if any, to award the respondent, will have the opportunity to consider the respondent's complaint that she is entitled to monthly maintenance greater than $800.

### Conclusion

The circuit court's judgment dividing the marital property of the parties and awarding the respondent attorney's fees is affirmed. Its judgment awarding maintenance to the respondent from the appellant is reversed and the cause remanded to the court for further proceedings consistent with this opinion.

HOWARD and HOLLIGER, JJ., concur.