

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| CHERYLENE R. COMBS, | ) | |
| | ) | |
| Respondent, | ) | WD85653 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| GARY COMBS, | ) | November 14, 2023 |
| | ) | |
| Appellant. | ) | |
| | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
**Honorable Alisha Diane O'Hara, Judge**

**Before Division Two: Janet Sutton, Presiding Judge,**
**Alok Ahuja, Judge, and Mark D. Pfeiffer, Judge**

Gary Combs (husband) appeals from the amended judgment entered by the Clay County Circuit Court after granting Cherylene Combs's (wife) Rule 74.06(b) motion to amend or set aside the judgment of dissolution of marriage. In his sole point on appeal, husband argues that the trial court abused its discretion in granting wife's motion because wife failed "to identify a reason to set aside the [j]udgment under Rule 74.06" and failed to meet Rule 74.06's standard for establishing "any of the acceptable reasons to amend or set aside" the judgment of dissolution. Finding the trial court abused its discretion, we reverse the trial court's amended judgment.

## Factual and Procedural Background

Wife and husband married in October 2001. Wife filed a petition for dissolution of marriage in October 2019, and, after the trial court granted leave to file his answer out of time, husband filed his answer and counter-petition in December 2019. As part of the dissolution action, husband filed his statement of marital and non-marital assets and debts, listing property including his Charles Schwab securities account, pension plan, and his "Fidelity 401k." In July 2020, wife and husband reached a settlement and filed a joint affidavit requesting dissolution with an attached marital separation and property settlement agreement, and the case was removed from the trial court's docket.

On July 27, 2020, the trial court entered a judgment of dissolution. The judgment of dissolution divided the marital property and awarded husband one of the marital homes with the greatest value, his pension, and the Fidelity 401(k), among other items.[1] To equalize the property division based upon the distribution of assets, wife was awarded a property equalization payment. The clause ordering the property equalization payment read as follows:

> To equalize based upon distributions of the assets, [husband] will pay to [wife] the sum of $180,000.00, distribution shall be pursuant to qualified transfer to an IRA or other qualified plan account in [wife]'s name and at the financial institution determined by [wife]. In the event of a Qualified Domestic Relations Order is necessary, the [c]ourt shall retain jurisdiction to enter a QDRO to accomplish the intent of this provision[.] [Husband] will pay any fees associated with the division and transfer of the property equalization[.] *This transfer shall occur within [thirty] 30 days of the date of dissolution of marriage.*

(Emphasis added).

In September 2020, the trial court entered a Qualified Domestic Relations Order (QDRO)

---

[1] The judgment of dissolution also included provisions about spousal maintenance, about child custody of the couple's two minor children, and about child support, as agreed by wife and husband in the settlement agreement, which are not at issue in this appeal.

the intent of which was to pay out the equalization payment to wife. The QDRO stated that wife was entitled to $180,000.00 of husband's vested accrued benefits under his Nationwide Retirement Plan[2] as of July 27, 2020. The QDRO, however, did not indicate that a transfer of these funds was to occur within thirty days. Further, the Nationwide Retirement Plan specified in the QDRO was a defined-benefit plan,[3] meaning a monthly benefit retirement plan subject to taxes and penalties if withdrawn before age fifty-nine and a half, in this case in October 2030. Thus, wife could not receive the $180,000.00 from this account within thirty days as ordered by the judgment of dissolution.

In October 2020, after receiving correspondence from Fidelity, wife learned that she would not receive the $180,000.00 property equalization payment within the thirty days specified by the original final judgment. Wife filed a motion for contempt and an application for a show-cause order against husband in January 2021. In her motion for contempt, wife argued that husband refused to follow the trial court's property equalization order (1) by failing to authorize the property equalization to be made to wife within thirty days of transfer and (2) by refusing to "authorize property equalization from an asset to be paid to the financial institution determined by [wife]." The trial court held a hearing on the contempt motion in February 2021, and denied wife's motion for contempt the same day without explanation.

In May 2021, wife filed a motion to amend or set aside the judgment and decree of

---

[2]  Based on the list of marital property determined in settlement and the correspondence between the parties and the attorney who prepared the original QDRO, we presume this "Nationwide Retirement Plan" to be husband's "pension" as allocated in the original judgment of dissolution and listed as marital property during settlement.

[3]  A defined-benefit plan is a retirement plan "established and maintained by an employer primarily to provide systematically for the payment of definitely determinable benefits to employees over a period of years, usu[ally] for life, after retirement. . . ." *Employee-Benefit Plan*, *Black's Law Dictionary* (11th ed. 2019) (defining "defined-benefit plan").

dissolution of marriage under Rule 74.06(b),[4] and filed an amended motion the next day. Wife argued that the original judgment of dissolution should be amended or set aside because "the transfer of liquid retirement assets were an integral component to the settlement agreement of the parties as it would allow [wife] to obtain permanent housing in exchange for [husband] maintaining the marital residence." Further, wife stated that "the agreement for a property equalization payment was the primary inducement for [wife]'s acceptance of the terms of the agreement" and, "[i]f it had been disclosed by [husband] that he intended only to transfer to her the equivalent of the distribution amount of $180,000.00 from a defined benefit plan," she would not have consented to the agreement and would have sought alternate relief.

Following husband's submission of suggestions in opposition, the trial court set the matter for hearing in August 2021. During the August hearing, wife presented husband's sworn testimony about the QDRO and the property equalization payment as support for her motion.

In November, the trial court then entered an order granting wife's motion to amend the judgment of dissolution. Specifically, the trial court ordered that the judgment of dissolution be amended to "change the payment method for the equalization payment in the amount of $180,000.00 [to] be paid through [husband]'s Nationwide Savings Plan[5] in the amount of

---

[4] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2016, and all rule references are to the Missouri Supreme Court Rules.

[5] The record lacks any reference to the "Nationwide Savings Plan" prior to its mentioning in the order granting wife's motion to amend. The "Nationwide Savings Plan" is not mentioned in husband or wife's statements of marital and non-marital assets, the marital separation and property settlement agreement, or the Schedule A-1 distribution of property and debts included in the original judgment of dissolution. Further, wife alleges in her brief to this Court that she had no prior knowledge of the Nationwide Savings Plan "because the same was not disclosed during dissolution."

We, however, assume husband's "Nationwide Savings Plan" to be his "Fidelity 401(k)" as listed in his statement of marital assets, in the Schedule A-1, and divided in the original judgment of

4

$109,425.00, [and paid through] [husband]'s Charles Schwab account in the amount of $2,944." Further, the trial court ordered that husband pay wife any outstanding balance within thirty days of the order, that husband pay wife's attorney fees per wife's request in the motion to set aside, and that if husband failed to comply with the order, he could be found in contempt. The trial court, however, did not enter an amended judgment at that time.

In February 2022, wife filed a second application for an order to show cause and motion for judgment of contempt based on husband's failure to follow the trial court's order. In March 2022, wife also filed a motion requesting the court to approve two new QDROs pursuant to the trial court's order.

The trial court issued a show cause order, husband filed a response to wife's motion for contempt, and a hearing was scheduled for March 2022 to address both wife's motion for contempt and her motion to approve the amended QDROs. During the March hearing, the trial court determined that it had not yet entered an amended judgment of dissolution, and thus could not find husband in contempt without the amended judgment having been entered.

On July 19, 2022, the trial court entered the amended judgment of dissolution of marriage. The amended judgment of dissolution repeated the *original* property equalization clause from the original judgment of dissolution, as provided *supra*, and included a second, new and revised property equalization clause. The new property equalization clause added:

> To equalize equities based upon distribution of the assets, [husband] will pay to [wife] the sum of $180,000.00, distribution shall be paid through [husband]'s Nationwide Savings Plan in the amount of $109,425.00, and [husband]'s Charles Schwab account in the amount of $2,944.00. Any outstanding balance shall be paid by [husband] withing [sic] 30 [thirty] days of this [o]rder directly to [wife] or the sum shall become a [j]udgment against [husband]. If the remaining balance is not paid within 30 [thirty] days [husband] could be found in contempt of [c]ourt.

dissolution. Additionally, Fidelity corresponded on behalf of Nationwide when updating the parties on the status of the original QRDO dividing husband's Nationwide Retirement Plan.

In the event a Qualified Domestic Relations Order is necessary, the [c]ourt shall retain jurisdiction to enter a QDRO to accomplish the intent of this provision. [Husband] will pay any fees associated with the division and transfer of the property equalization. This transfer shall occur within 30 [thirty] days of the date of dissolution of marriage.

The amended judgment purported to award husband his Nationwide Savings Plan in the property division section, just as in the original judgment, but then ordered a portion of the Nationwide Savings Plan paid out to wife in the property equalization clause.[6] The amended judgment also failed to divide husband's Charles Schwab securities account in the property division, but instead ordered the account paid to wife in the amended equalization clause.[7] Thus, this new clause, instead of ordering a purported lump sum equalization payment, essentially re-divided some

---

[6] As listed in husband's statement of marital and non-marital assets, husband' 401(k), herein referred to as his Nationwide Savings Plan, was listed as having a fair market value of $118,183.00.

In his statement of marital and non-marital assets, husband recorded that he and wife jointly borrowed $33,376.00 from this account and still owed this amount. Wife, however, did not list the funds borrowed from Husband's Nationwide Savings Plan as joint debts, nor did she record the debt whatsoever on her statement of marital and non-marital assets.

Regardless, the actual equity in husband's Nationwide Savings Plan account was listed as $84,807.00. Neither the original judgment of dissolution nor the amended judgment award husband a specified amount from his Nationwide Savings Plan, but award husband 100% of this account. For purposes of this appeal, we simply use the fair market value of $118,183.00 as the value of the Nationwide Savings Plan, and note that wife was only ordered to be paid a portion of that amount.

[7] The Charles Schwab securities account was not awarded in the original judgment. Neither party raises this issue on appeal. We need not dismiss husband's appeal for lack of finality of judgment. As *State ex rel. McClintock v. Black*, 608 S.W.2d 405, 406 (Mo. banc 1980) states:

If the undistributed property is discovered before the time for appeal has run, the appellate court, when presented with an appeal raising the issue of undistributed property, must dismiss the appeal because the trial court has not exhausted its jurisdiction and has not rendered a final judgment from which an appeal can be taken. On the other hand, once the time for appeal has run, the order of the trial court, although it has failed to divide all of the marital property, is *res judicata* and final as to the property with which it has dealt.

marital property and divided property previously unawarded in the original judgment.

Husband appeals.

## Legal Analysis

In his sole point on appeal, husband argues that the trial court erred in granting wife's motion to amend or set aside the judgment of dissolution of marriage under Rule 74.06(b). Husband asserts the trial court erred because wife (1) failed to identify a specific reason to set aside the judgment under Rule 74.06 and (2) failed to "meet the standard for establishing any of the enumerated reasons to amend or set aside a [j]udgment under Rule 74.06." We agree that the trial court abused its discretion.

Rule 74.06(b) states:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

"[T]he trial court is afforded broad discretion when acting on a Rule 74.06 motion, and the appellate court should not interfere unless the record convincingly shows an abuse of discretion." *Cnty. of Boone v. Reynolds*, 573 S.W.3d 696, 702–03 (Mo. App. W.D. 2019) (quoting *Vang v. Barney*, 480 S.W.3d 473, 475 (Mo. App. W.D. 2016)). "[A]buse of discretion may only be found where the trial court's decision 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* at 703 (quoting *Vang*, 480 S.W.3d at 475).

Here, the trial court erred in granting wife's motion to amend because wife failed to adequately support her Rule 74.06(b) motion with affidavits or sworn testimony. Although wife

7

offered husband's hearing testimony in support of her Rule 74.06(b) motion to amend or set aside, husband's testimony offered no meaningful support for wife's allegations.

"A [Rule 74.06(b)] motion to set aside a judgment cannot prove itself." *Dallas-Johnson Properties, Inc. v. Hubbard*, 823 S.W.2d 5, 6 (Mo. App. E.D. 1991) (citation omitted). "Even if a motion contains sufficient allegations of fact to support setting aside a judgment, the motion cannot normally be granted unless it is verified, or supported by affidavits or sworn testimony produced at a hearing on the motion." *Clark v. Clark*, 926 S.W.2d 123, 127 (Mo. App. W.D. 1996) (citing *Dallas–Johnson Properties, Inc.*, 823 S.W.2d at 6). "'[A]llegations in a motion are not self-proving.'" *Wilson v. Wilson*, 667 S.W.3d 181, 187 (Mo. App. W.D. 2023) (quoting *Lombardo v. Lombardo*, 120 S.W.3d 232, 241 (Mo. App. W.D. 2003)). *See also*, *e.g.*, *Chatman v. Chatman*, 673 S.W.3d 528, 531 (Mo. App. E.D. 2023) (refusing to consider factual allegations made in wife's motion to set aside a dissolution decree, when those allegations were not supported by competent evidence).

Wife's motion to amend the judgment contended that a lump-sum transfer of "liquid retirement assets" was a central provision of the parties' settlement agreement, because "it would allow [wife] to obtain permanent housing in exchange for [husband] maintaining the marital residence." Wife also contended in her motion that the $180,000 equalization payment "was the primary inducement for [wife]'s acceptance of the terms of the agreement," and that, if she had known that husband only intended to transfer $180,000 in *value* from a defined benefit retirement plan, she would not have agreed to the original dissolution decree's property division. Although wife's motion to amend the judgment cited Rule 74.06(b) generally, it did not specify on which particular ground for vacating a judgment her motion relied. From her factual allegations, it appears that wife may have been contending that she was entitled to relief from the

original dissolution decree on the basis of mistake, or because of fraud, misrepresentation or misconduct by husband, or because it was no longer equitable to enforce the original judgment.

Husband's testimony was the sole evidentiary support for wife's motion to amend the judgment. In his testimony, husband acknowledged that he had agreed in the settlement agreement to pay wife the sum of $180,000 as an equalization payment. He testified, however, that, in his view, he had complied with the agreement through "a distribution from [his] pension." Husband contended that Nationwide's letter from November 27, 2020, reflected that husband paid the equalization payment when it stated, "In accordance with the terms of the Domestic Relations Order[,] Cherylene Combs, 'Alternate Payee' has been assigned $180,000 of Gary W Comb's 'Participant' account balance in the Nationwide Retirement Plan . . . ."

Husband's testimony did not substantiate wife's allegations that the equalization payment was intended as a *quid pro quo* for husband's retention of the marital residence; that the payment was intended to permit wife to buy a home; that the equalization payment was central to wife's agreement to the original property division; or that wife would not have agreed to the division without the equalization payment. Nothing in husband's testimony establishes that the original dissolution decree was based on mistake, fraud, misrepresentation, or misconduct by husband, or that the continued enforcement of the original judgment would be inequitable as Rule 74.06(b) requires.

The original judgment of dissolution merely provided for husband to "pay to [wife] the sum of $180,000.00 . . . pursuant to qualified transfer to an IRA or other qualified plan account in [wife]'s name," without explicitly specifying the source of that payment.[8] With only

---

[8] We also note that the trial court's amended judgment appears to contemplate that husband would pay approximately $68,000.00 of the equalization payment "directly" to wife—in other words, *not* by means of a "qualified transfer" between tax-advantaged retirement accounts. By

9

husband's testimony before it, the trial court could not find that wife supported any of her factual allegations or that the original decree was the product of mistake, fraud, misrepresentation, or misconduct, or that continued enforcement of the equalization-payment provision would be inequitable. While the evidence before the trial court suggested that the parties disagreed as to whether husband had *complied with* the equalization-payment provision, that evidence did not support vacating the provision itself. Further, it is unclear to this Court why wife herself did not provide an affidavit nor testify in support of her own motion at the motion hearing. Accordingly, because the record before the trial court failed to establish a basis for vacating the property division in the original dissolution decree under Rule 74.06(b), we are constrained to reverse the trial court's amended judgment.

It is significant that wife's complaint, subsequent to November 2020, appears to have been that husband had *failed to comply* with the equalization-payment provision contained in the original dissolution decree—not that the original decree's ordering of an equalization payment was itself unfair, inequitable, or contrary to the parties' intent. A party's failure to comply with a judgment may be grounds for *enforcement* of the judgment's provisions, it does not necessarily establish a basis for *substantive modification* of the judgment itself. We note that the trial court *refused* to find husband in contempt of the original judgment—a ruling which wife does not challenge.

Even if there had been sufficient grounds proven under Rule 74.06(b), the trial court abused its discretion by improperly *amending*, rather than vacating, the portion of the judgment

---

ordering this "direct" payment, presumably from after-tax funds, it appears that the trial court may have substantially increased the economic value of the equalization payment to wife. Nothing in the record, however, supports a substantial increase in the value of the equalization payment, beyond the $180,000.00-by-qualified-transfer ordered in the original dissolution decree.

dividing the parties' marital property. The trial court could not amend the original judgment's property division as a matter of law. While generally a trial court's "power to modify a judgment ceases when the judgment becomes final," in dissolution proceedings "statutes authorize courts to modify some issues decided in a final dissolution judgment in response to changing circumstances." *Olofson v. Olofson*, 625 S.W.3d 419, 433 (Mo. banc 2021) (citations omitted). No statute, however, allows for the modification of a division of marital property. *Id.* In fact, sections 452.330.5[9] and 452.360.2.[10] specifically prohibit the modification of marital property divisions. *Id.*; § 452.330.5; § 452.360.2.

The general statutory prohibition against modifying a marital property division does not foreclose all avenues by which a trial court may relieve parties from such division pursuant to Rule 74.06(b). *Olofson*, 625 S.W.3d at 433. Parties may nonetheless seek relief from a final judgment of dissolution under Rule 74.06(b). "The plain language of Rule 74.06(b) authorizes a [trial] court to *vacate a portion of a judgment* as relief from the final judgment." *Id.* at 436 (emphasis added). Thus, for a trial court to provide relief from the division of marital property, Rule 74.06(b) authorizes the trial court not to amend but to "vacate only the property division of

---

[9] Section 452.330.5 states:

> The court's order as it affects distribution of marital property shall be a final order *not subject to modification*; provided, however, that orders intended to be qualified domestic relations orders affecting pension, profit sharing and stock bonus plans pursuant to the U.S. Internal Revenue Code shall be modifiable only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

(Emphasis added).

[10] Section 452.360.2 states, "The court's judgment of dissolution of marriage or legal separation as it affects distribution of marital property shall be a final judgment not subject to modification." (Emphasis added).

11

the dissolution judgment" if justified under one of Rule 74.06(b)'s grounds. *Id.* at 436–37.

Rule 74.06 and *Olofson v. Olofson* clearly dictate that, had the trial court believed the property division and corresponding equalization payment inequitable, it should have vacated the portion of the judgment of dissolution dividing the parties' property. *See Olofson*, 625 S.W.3d at 433, 436–37. Because amending the property division was contrary to both Missouri statute and *Olofson*, the trial court abused its discretion.

Furthermore, the property equalization as amended was not in keeping with the purpose of property equalization payments. Section 452.330 provides a two-step process that trial courts follow in dissolution actions. *Cohen v. Cohen*, 73 S.W.3d 39, 53 (Mo. App. W.D. 2002). The trial court must first set aside each spouse's non-marital property and then divide the remaining marital property and debts in such proportion as the trial court deems just. *Id.* To equitably distribute marital property, section 452.330 also "grants trial courts the discretion to award an equalization payment in lieu of the division of actual marital assets . . . and to award an equalization payment in installments if there are not sufficient liquid assets." *Sparks v. Sparks*, 417 S.W.3d 269, 290 (Mo. App. W.D. 2013) (internal citations omitted).

Trial courts may order one spouse in a dissolution action to make a cash payment—a property equalization payment—to the other "to effectuate a just and fair division of marital property where it is impossible or imprudent to divide the property in kind." *Cohen*, 73 S.W.3d at 54. Thus, trial courts may determine whether to award an equalization payment after the division of marital assets and debts to ensure a fair and equitable division of property under the circumstances. *Sparks*, 417 S.W.3d at 287–91. We note that the trial court's amended property equalization clause improperly redistributed part of the parties' property that had already been divided in the property division. Again, an equalization payment is awarded "*in lieu of the*

12

*division of actual marital assets*." *Sparks*, 417 S.W.3d at 290 (emphasis added). Our opinion

should not be read as precluding wife from pursuing further action.

## Conclusion

Finding the trial court abused its discretion, we reverse the trial court's judgment.

_____
Janet Sutton, Presiding Judge

Alok Ahuja and Mark D. Pfeiffer, Judges, concur.

13