**Harry B. COHEN, M.D., Appellant–Respondent,**

v.

**Ann M. COHEN, Respondent–Appellant.**

**Nos. WD 63548, WD 63566, WD 64252.**

Missouri Court of Appeals, Western District.

Oct. 11, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 22, 2005.

As Modified Nov. 22, 2005.

John R. Shank, Jr., Kansas City, MO, for appellant-respondent.

Elizabeth K. Magee, Lawrence W. Ferguson, Co–Counsel, Columbia, MO, for respondent-appellant.

Before BRECKENRIDGE, P.J., LOWENSTEIN and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

Harry B. Cohen (Husband) appeals, for the second time, from a judgment in the proceedings concerning the dissolution of his marriage to Ann M. Cohen (Wife). In his first appeal, Husband challenged the trial court's maintenance award to Wife, division of property, and award of attorney's fees to Wife. This court reversed and remanded the maintenance award and affirmed the trial court's judgment in all other respects. While the remand was pending, Husband filed a motion for contempt and a motion for modification of

child support, both including a claim for his attorney's fees. Wife filed a motion to transfer to her custody of the trust account of the parties' minor daughter. She also requested attorney's fees for the circuit court proceedings. The trial court consolidated for hearing the remanded maintenance issue and all other motions.

After a hearing, the trial court entered its judgment. In its judgment, the trial court awarded modifiable maintenance to Wife of $688 per month. The trial court also modified the award of child support, ordering Husband to pay $1823 per month. Additionally, the trial court found Wife in contempt for failing to deliver to Husband some of the property awarded to him in the initial decree. The court also awarded Wife $9000 in attorney's fees for the circuit court proceedings and found that Husband's request for attorney's fees was abandoned. Finally, the trial court found that it lacked jurisdiction over Wife's motion to transfer custody of her daughter's trust account and denied Wife's motion. Both Husband and Wife appeal the judgment of the trial court. While the case was pending on appeal, Wife filed a motion for attorney's fees on appeal. The trial court sustained her motion and entered a judgment of $8,500 for Wife's attorney's fees. Husband also appeals this judgment. The appeals are consolidated.

Husband raises fourteen points on appeal. Seven of Husband's points challenge various aspects of the trial court's award of $688 in monthly maintenance to Wife. In three points, he challenges the trial court's two awards of attorney's fees to Wife and the court's failure to award him attorney's fees on his motion for contempt. In another point, Husband claims that the trial court erred in failing to make all the findings of fact he requested. In an additional point, Husband asserts that the trial court erred in finding that Wife's relationship with Glen Hancock was "irrelevant" to the proceedings. And, in his final two points, Husband challenges the trial court's child support award.

Wife cross appeals the trial court's judgment and raises two points. In her first point, Wife claims the trial court erred in finding her in contempt of court because there was not substantial evidence that she had the marital property awarded to Husband. In her second point, Wife asserts the trial court erred in awarding her only $9000 in attorney's fees for the circuit court proceedings because Husband has substantially more income than she does.

Because the trial court's calculation of child support utilized an incorrect amount for Husband's monthly gross income, the trial court's award of child support is erroneous. The trial court also erred in awarding Wife interest on the award of maintenance from the date of the trial court's original judgment to the date of the judgment on remand. The trial court's judgment on these two issues is reversed and modified by this court, pursuant to Rule 84.14. The remainder of Husband's points on appeal are without merit and, therefore, are denied. On Wife's cross appeal, the trial court's judgment finding Wife in contempt is not ripe for appeal, so Wife's appeal of the contempt order is dismissed. Finally, Wife's challenge to the attorney's fees awarded to her for the circuit court proceedings is without merit and is denied.

### Factual and Procedural Background

Husband and Wife were married on February 17, 1973. On May 24, 1999, Husband filed a petition for dissolution of the parties' marriage. The trial court entered its judgment dissolving the parties' marriage on May 25, 2000. The judgment awarded the parties joint legal custody of their minor child, Elizabeth, and Wife sole

physical custody. The trial court further ordered Husband to pay $1856 per month in child support and $800 per month in non-modifiable maintenance. The trial court divided the parties' assets, which included IRAs, so that they each received fifty percent of the marital property. In order to achieve this equal division of marital property, the trial court ordered Husband to make a cash payment of $362,500 to Wife.

Husband appealed and Wife cross-appealed the trial court's May 25, 2000 judgment. In *Cohen v. Cohen,* 73 S.W.3d 39 (Mo.App.2002) (*Cohen I*), this court reversed the trial court's judgment with regard to maintenance, and affirmed the trial court's judgment in all other respects. The *Cohen I* court remanded the case back to the trial court with instructions to re-evaluate whether the IRAs awarded to Wife were income producing and, if so, whether any amount of that income should be imputed to Wife in light of *Hill v. Hill,* 53 S.W.3d 114 (Mo. banc 2001). 73 S.W.3d at 49. In addition, this court directed that, because there was "no substantial evidence of an impending change in the financial circumstances of the parties in the future" that would justify termination of Wife's maintenance, Wife's maintenance should not be limited in duration and should be modifiable. *Cohen I,* 73 S.W.3d at 59.

While the remand was pending on the issue of maintenance, the parties filed other pleadings. Husband filed a motion to modify, seeking to reduce the award of child support, and a motion for contempt for Wife's failure to deliver $27,831 of the property awarded to him.[1] Wife filed a motion to transfer custody to her of the trust account of the parties' minor child. The trial court heard evidence on the remanded issue of maintenance and the oth-er pending motions and, on October 23, 2003, the trial court issued its second judgment. In that judgment, the trial court noted that, while it was obligated to consider income from Wife's IRAs, it was not obligated to impute that income to Wife. The trial court declined to impute IRA income to Wife because, even though it found that Wife could withdraw up to $1100 per month from her accounts without penalty, it found that such withdrawals would reduce the assets of her accounts. Thus, the trial court ordered Husband to pay monthly maintenance of $688 to cover the shortfall between Wife's reasonable monthly expenses and Wife's monthly income. Based on this new maintenance award, the award of child support was modified, and Husband was ordered to pay $1823 per month. The trial court awarded Wife $9000 in partial attorney's fees for the circuit court proceedings. The court further found that Husband abandoned his claim for attorney's fees. Finally, the trial court found Wife in contempt of court for failing to deliver property to Husband, as required by the trial court's original judgment, and ordered Wife to compensate Husband in the amount of $27,831. Husband appeals and Wife cross appeals this new judgment. After the appeal and cross appeal were filed, Wife filed a *motion for attorney's fees on appeal,* which the trial court sustained and awarded Wife $8500. Husband also appeals this second award of attorney's fees to Wife. The appeals are consolidated. For ease of discussion, some of the parties' points will be considered together and some will be taken out of order.

### No Error in Failing to Make Findings of Fact

It is necessary to first consider Husband's claim that the trial court committed

---

1. The trial court's judgment contains a scrivener's error regarding the amount Wife owes Husband. On remand, paragraph XXI should be amended to replace $16,331 with $26,331.

reversible error in failing to make certain findings of fact and conclusions of law. If this claim is meritorious, the judgment entered on October 23, 2003, would be reversed without consideration of the merits of Husband's appeal. Husband asserts that the trial court did not comply with his written request for findings of fact and conclusions of law, made under Rule 73.01. Husband claims the trial court erred in not specifically making findings of fact with regard to his requests # 2, 3, 5, 6, and 11. Additionally, Husband claims the trial court erred in failing to make specific conclusions of law with regard to his requests # 7 and 12.

■ Under Rule 73.01(c), "[t]he court may, or if requested by a party *shall*, include in the opinion findings on the controverted fact issues specified by the party." (Emphasis added). Husband claims that the trial court's failure to make the required findings is reversible error. Husband is correct that the trial court's failure to make "specific findings of fact as requested is error[.]" *Flud v. Flud*, 926 S.W.2d 201, 204 (Mo.App.1996). Nevertheless, "failure of a trial court to issue findings which were properly requested does not always require reversal." *Id.* Rather, reversal is mandated only when the trial court's failure to issue the requested findings "materially interferes with appellate review." *Id.* "If the record is sufficient to support the judgment, the appellate court will affirm." *Id.*

■ Here, Husband requested specific findings on both subparagraphs of subsection one of section 452.335, RSMo 2000.[2] The trial court did not make findings that expressly utilized the language of subparagraphs (1) and (2) of section 452.335. The

trial court did make a written finding that Wife's reasonable expenses were greater than her income from employment and property, which addresses the issue of whether Wife was able to support herself through appropriate employment and lacked sufficient property to provide for her own reasonable needs. The finding states, "The difference between [Wife's] income ($3,666.00 and $308.00 interest on cash accounts) and her found reasonable expenses of $4,662.00 leaves a difference of $688.00 per month." This finding is substantially sufficient to comply with Husband's requests # 2 and 3. Additionally, Husband's counsel conceded at oral argument that the trial court's failure to make findings on these issues was not prejudicial as it did not materially interfere with this court's review of the trial court's decision.

■ Husband's request # 5 relates to whether interest income from Wife's IRA accounts should be included as her income for calculation of her child support obligation under Form 14. As discussed more thoroughly, *supra*, the trial court specifically found that it was required to consider income Wife could withdraw from her IRA accounts with regard to both maintenance and child support, but that it was not required to impute this income to Wife. The court found that, while Wife could withdraw income from her IRA accounts, she could not do so without reducing the assets of the accounts. Consequently, the trial court declined to impute this income to Wife. The trial court's findings are not specific to maintenance, indicating that the trial court reached this decision as to both maintenance and child support.

Such a decision is consistent with Missouri law. For example, in *Evans v. Evans*, 45 S.W.3d 523, 531 (Mo.App.2001),

**2.** All statutory references are to the Revised Statutes of Missouri 2000, unless otherwise

indicated.

this court noted that there is "no persuasive reason why the court can reach different conclusions regarding income imputation in its maintenance and child support calculations." The findings of the trial court permit this court to review the trial court's decision for error. Consequently, the trial court's failure to make a specific finding with regard to Husband's request # 5 does not materially interfere with this court's review of the trial court's decision.

Husband's request # 6 relates to whether Wife may withdraw income from her IRAs without invading her principal before Wife reaches the age of fifty-nine and a half. The trial court specifically found that, while Wife could withdraw income without penalty, she could not do so without reducing the assets of her IRA accounts. Therefore, contrary to Husband's argument, the trial court has directly addressed the information sought in Husband's request # 6.

Husband's request # 7 relates to whether Missouri law "require[s] that there be no invasion of the principal of an IRA if interest earned and withdrawals from the IRA are to be counted toward maintenance and child support." Husband's request # 12, relates to whether the trial court has "the authority and jurisdiction to reduce child support" retroactively. Both of these requests call for legal conclusions.

Findings of fact and conclusions of law are treated differently under Missouri law. Rule 73.01 states in pertinent part:

If a party so requests, the court shall dictate to the court reporter or prepare and file a brief opinion containing a statement of the grounds for its decision and the method of deciding any damages awarded.

The court may, or if requested by a party shall, include in the opinion findings on the controverted fact issues specified by the party. Any request for an opinion or findings of fact shall be made on the record before the introduction of evidence at trial or at such later time as the court may allow.

Thus, while Rule 73.01(c) requires findings as to each controverted fact issue identified by the party, the rule does not require the same treatment for legal conclusions. *Dorman v. Dorman,* 91 S.W.3d 167, 171 (Mo.App.2002). With regard to legal conclusions, "[a]ll that Rule 73.01 requires is that the court make a statement of the grounds for its ultimate decision." *Id.* The trial court set forth the grounds for both of the decisions referenced by Husband's request. As such, the trial court did not err in failing to specifically respond to Husband's requests # 7 and # 12.

Husband's request # 11 relates to whether the child support the trial court provided under Form 14 was sufficient to meet Elizabeth's reasonable needs, without considering any extraordinary needs. The trial court made a written finding that Husband should pay $416 monthly for the cost of Elizabeth's extraordinary child rearing expenses, such as dance and voice training, which Husband and Wife have always provided for their daughter. The court also made a written finding that it was rejecting other proposed extraordinary expenses, such as camp. "In construing a court's judgment, the words and clauses used in a judgment are to be construed according to their natural and legal import." *Holsman v. Holsman,* 49 S.W.3d 795, 797 (Mo.App. 2001). The natural import of the trial court's award of $416 per month to cover the cost of activities is that Elizabeth has needs that exceed the basic child support amount. Inherent in the separate award of "Other extraordinary child rearing costs" is the finding that the child has needs in addition to those covered by the

basic child support amount. Therefore, the trial court's decision can reasonably be viewed as having found that the basic child support amount was insufficient to meet Elizabeth's needs. Accordingly, the trial court's findings on extraordinary expenses are sufficient and its failure to make a specific finding with regard to Husband's request # 11 does not materially interfere with this court's review of the trial court's decision. Husband's point asserting error for failure to make findings is denied.

## No Error in Finding Wife's Relationship with Glenn Hancock "Irrelevant"

■ In one of his points on appeal, Husband asserts the trial court erred in finding Glen Hancock's relationship with Wife "irrelevant" to the proceedings. Husband claims there was substantial evidence presented that Mr. Hancock was living with Wife and that Wife was using her income to support Mr. Hancock. Thus, Husband concludes, this evidence should have been considered by the trial court because it is "very relevant to the issue of maintenance."

"The trial court is granted broad discretion in determining the relevance of evidence and the trial court's rulings will not be disturbed by this court on appeal unless an abuse of discretion is shown." *Koontz v. Ferber*, 870 S.W.2d 885, 891 (Mo.App. 1993). "Evidence is considered relevant if it tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Id.* "An abuse of discretion is shown when the trial court's ruling is 'clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Id.* (citation omitted).

The maintenance award at issue here is an initial award of maintenance and, therefore, is governed by section 452.335. Under section 452.335, "[a] court may grant maintenance if it finds that the spouse seeking it: (1) lacks sufficient property, including marital property apportioned to the spouse, to provide for the spouse's reasonable needs; and (2) is unable to support herself or himself through appropriate employment." *Hill v. Hill*, 53 S.W.3d 114, 115 (Mo. banc 2001). *See also* Section 452.335.1(1)-(2). Once these criteria are satisfied, the court is to set the amount of maintenance by considering ten enumerated factors, including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors. Section 452.335.2.

In this case, the trial court specifically found that because "Glen Hancock is neither married to [Wife] nor providing support to [Wife], his status is irrelevant to this cause in all respects." In *Brown v. Brown*, 673 S.W.2d 113, 116 (Mo.App. 1984), this court found that because support from a cohabitant is not "property" of a spouse seeking maintenance and is irrelevant to the issue of a spouse's ability to support herself through appropriate employment, "evidence of support by the cohabitant cannot be utilized to deny a spouse a *right* to maintenance." Thus, this court finds that the trial court did not abuse its discretion in finding that Mr. Hancock is irrelevant to the case concerning Wife's right to receive maintenance.

Husband, nevertheless, argues that Mr. Hancock's relationship with Wife is relevant to the determination of the amount of maintenance awarded to Wife with regard to factor nine, the parties' conduct during the marriage, and factor ten, any other relevant factors. Section 452.335.2(9), (10). In *Brown*, this court did find that the wife's cohabitation with a third party was relevant to a determination of the amount of maintenance with respect to the factors noted by Husband. *Id.* In particular, in *Brown*, the evidence demonstrated that the cohabitation by the spouse seeking maintenance had begun before the dissolution decree was entered and the cohabitant had supported the spouse for twenty-seven months. *Id.* Thus, this court reversed and remanded the maintenance award and instructed the trial court to consider the evidence regarding the cohabitation in redetermining the amount and duration of maintenance. *Id.*

▮ Nevertheless, on the facts of this case, this court finds that the trial court did not abuse its discretion in finding evidence of Mr. Hancock's relationship with Wife irrelevant regarding factors nine and ten. First, regarding factor nine, "[t]he conduct of the parties during the marriage," Husband does not allege that Wife's relationship with Mr. Hancock began *during* the marriage, as was the case in *Brown*. Rather, here, the parties' marriage was dissolved by the trial court's initial judgment, entered on May 25, 2000. The evidence was that Wife did not begin to socialize with Mr. Hancock until September 2000, when Mr. Hancock began to renovate her house. Thus, this court finds no abuse of discretion in finding Mr. Hancock irrelevant concerning the conduct of the parties *during* the marriage.

▮ With respect to factor ten, "[a]ny other relevant factors[,]" Husband argues the relevance of Mr. Hancock is that Wife was providing support to Mr. Hancock. While Husband fails to develop his argument, it appears that the gist of his argument is that if Wife is providing support to Mr. Hancock, her "reasonable needs" or monthly expenses would be overstated, thereby widening the gap between her income and her expenses. Thus, the argument would be that a larger gap between Wife's reasonable expenses and her income would yield a larger maintenance award. Husband, however, failed to challenge any of Wife's expenses, including that some of her expenses were going to provide support to Mr. Hancock. In fact, as discussed above, the trial court found that Wife's reasonable monthly expenses were $4662, and her monthly income was $3666, a gap of $688, which the trial court ordered Husband to pay as maintenance. Husband did not challenge Wife's reasonable expenses but, rather, only challenged the trial court's calculation of Wife's monthly income and, even on that point, Husband's only challenge was with respect to the trial court's failure to impute IRA income to

Wife. Husband offered no evidence that Wife's monthly expenses were increased in any way by her relationship with Mr. Hancock. Consequently, this court cannot say that the trial court abused its discretion in finding that Mr. Hancock was irrelevant to the proceedings because Wife provided support to Mr. Hancock since none of her stated expenses were shown to be used for that purpose. Husband's point is denied.

### Award of Maintenance Supported by Evidence and Not an Abuse of Discretion

In four of Husband's points on appeal, he challenges the trial court's award of $688 per month in maintenance to Wife. In two of these points, he asserts the trial court erred in failing to make the statutory findings concerning Wife's entitlement to maintenance, which has been found to be without merit. In these two points, Husband also challenges the trial court's finding that Wife could not make withdrawals from her IRA without reducing the assets of the accounts, which underlies the court's decision not to impute IRA income to Wife. In another of the points, Husband claims the trial court erred in awarding Wife maintenance because the evidence failed to establish that Wife possessed insufficient property to provide for her reasonable needs and that she was incapable of supporting herself through appropriate employment. See Section 452.335.1(1)—(2). Finally, Husband claims that the trial court abused its discretion in granting Wife maintenance because income from Wife's IRAs should have been imputed to Wife and, therefore, additional income of $1100 per month would have been available to Wife to meet her needs.

· As stated previously, under section 452.335.1, the trial court may award maintenance:

[O]nly if it finds that the spouse seeking maintenance:

(1) Lacks sufficient property, including marital property apportioned to him, to provide for. his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Husband argues that the evidence failed to establish that Wife possessed insufficient property to provide for her reasonable needs and that she was incapable of supporting herself through appropriate employment. In reviewing the trial court's decision, this court "consider[s] all the evidence ... in the light most favorable to the trial court's decision, and disregard[s] all contrary evidence and inferences." *N.M.O. v. D.P.O.*, 115 S.W.3d 854, 856 (Mo.App.2003).

In this case, the trial court calculated Wife's monthly expenses to be $4662 per month. The court calculated Wife's monthly income to be $3974 per month, which is comprised of employment income of $3666 per month and interest income of $308 per month on assets previously awarded to her. Based on these calculations, the trial court found that Wife had a monthly shortfall of $688 per month. The trial court further found that Wife could withdraw up to $1100 per month from her IRA accounts, without penalty, which Wife could use to cover her monthly shortfall. The trial court specifically found, however, that if Wife were to take up to $1100 per month from her IRA accounts to cover her shortfall in income, she would reduce the assets of the accounts. Consequently, the trial court did not impute any income to Wife from her IRA accounts. Rather, the trial court ordered Husband to pay Wife's $688 per month in maintenance.

While Husband argues that the evidence failed to demonstrate that Wife was unable to meet her reasonable needs or that she was incapable of supporting herself through appropriate employment, Husband does not challenge the trial court's calculation of Wife's monthly expenses of $4662. Nor does Husband argue that Wife was able to earn more than $3666 per month in employment income or $308 per month in interest income from cash assets previously awarded to her. Rather, the gist of Husband's argument is that the trial court erred in ordering him to pay Wife's monthly shortfall of $688 per month in maintenance because Wife could use income from her IRA accounts to meet her reasonable needs. In particular, Husband argues that, because the trial court found that Wife could withdraw up to $1100 per month from her IRA accounts, without penalty, the trial court erred in failing to impute that amount of additional monthly income to Wife.

 When determining whether income from an IRA should be imputed to a spouse, there are two competing principles that must be reconciled. The first is the general principle that investment income must be considered, so that maintenance is not awarded for the purposes of building an estate or accumulation of capital. *In re Marriage of Tappan*, 856 S.W.2d 362, 366–67 (Mo.App.1993). The second is the principle "that a spouse is not required to consume his or her apportioned share of marital property" before receiving maintenance. *Leslie v. Leslie*, 827 S.W.2d 180, 183 (Mo. banc 1992). In balancing these competing principles, the Missouri Supreme Court determined that, "when calculating maintenance, a trial court *must consider* the income from retirement and IRA accounts to be apportioned as marital property." *Hill*, 53 S.W.3d at 116 (emphasis added). The Court noted that, as part of its consideration, the trial court is to examine the "facts and circumstances of each case—including the cost to convert the account into cash, the age of the parties, their intent as to investment/consumption/retirement, the relative division of marital property and marital debts, and any equitable adjustment for reasonably certain taxes and penalties." *Id.* Despite the requirement that trial courts must consider these factors, "trial courts are not required to impute income [from] retirement and IRA accounts in every case." *In re Marriage of Novak*, 83 S.W.3d 597, 601 (Mo.App.2002). *See also Lee v. Lee*, 117 S.W.3d 693, 697 (Mo.App.2003).

 Here, the trial court's judgment expressly states that it considered Wife's IRA income before awarding Wife maintenance. Specifically, the trial court's judgment states: "The court has concluded that [Wife] could take as much as $1,100 per month without penalty; however, such withdrawal would, of course, reduce the assets of her IRA. Accordingly, the Court concludes that it is not proper to impute such income to [Wife]."[3] Thus, as direct-

---

3. The trial court utilized the term "assets" in its finding that Wife "could take as much as $1,100 per month without penalty; however, such withdrawal would, of course, reduce the assets of her IRA." This court finds that the trial court use of the word "assets" is synonymous with "principal" in this instance. The value of the IRAs at issue is comprised of the principal and the interest derived from that principal. It is self-evident that, in order to make withdrawals from the IRAs, the total amount of interest money available from the IRA would be reduced. Because the trial court's ruling was based on Wife's ability to withdraw funds without penalty, it is unlikely that the trial court based its decision not to count monies withdrawn from IRAs as part of Wife's income because the interest monies would be reduced. Rather, it is reasonable to find that the trial court based its decision on its belief that, in order to make such withdrawals without penalty, Wife would be

ed by *Hill,* this court finds that the trial court specifically considered income Wife could receive from her IRA accounts in awarding maintenance to Wife.

Husband next challenges the evidentiary basis for the trial court's decision not to impute IRA income to Wife. In particular, he contends the trial court erred in finding that Wife could not make withdrawals from her IRA without reducing the assets of her accounts. Husband claims there was substantial evidence presented that Wife could make withdrawals from her IRA accounts without reducing the principal of the accounts. Regarding this issue, however, the trial court was confronted with conflicting testimony from expert witnesses. For example, Husband's expert testified that Wife could withdraw an amount greater than $688 per month from her IRAs, without paying any penalties and without diminishing the principal of the accounts. Wife's expert, on the other hand, testified that she believed that Wife could not realistically withdraw an amount equal to, or greater than, $688 per month, without reducing the principal of her accounts. Wife's expert testified that, under the Internal Revenue Code, if one elects to take out distributions before reaching the age of fifty-nine and a half, one must meet certain criteria in order to avoid a ten percent penalty. In computing whether funds can be withdrawn without penalty, Wife's expert testified that an IRA beneficiary should stay between 80% and 120% of applicable federal interest rates because the Internal Revenue Service requires a reasonable rate of interest. On that basis, Wife's expert testified that Wife could not take out distributions large enough to satisfy the minimum rate of return, without the likelihood of invading her principal. In

effect, Wife's expert criticized Husband's expert's use of a range of 0% to 120% on the rate of return, which led Husband's expert to the conclusion that Wife could make withdrawals without incurring penalties or depleting her principal. The trial court was entitled to believe Wife's expert and disbelieve Husband's expert. *Patton v. Patton,* 973 S.W.2d 139, 147 (Mo.App. 1998). Deferring to the trial court's credibility determinations, there was substantial evidence to support the trial court's finding that Wife could not make withdrawals from her IRA accounts without reducing the principal of the accounts.

Husband also asserts that the trial court abused its discretion when it did not impute income to Wife from the IRAs. "A trial court has broad discretion in awarding maintenance," and this court will "only interfere with such an award upon finding an abuse of that discretion." *N.M.O.,* 115 S.W.3d at 857. Further, the trial court's decision as to whether income from an IRA should be imputed to the spouse is given "broad discretion." *Hill,* 53 S.W.3d at 116. "An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances before it and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *In re Marriage of Barton,* 158 S.W.3d 879, 888 (Mo.App.2005).

Under this standard, the trial court did not abuse its discretion in not imputing such income to Wife. In considering the factors outlined by the Supreme Court in *Hill,* even though the trial court found that Wife could withdraw up to $1100 monthly from her IRA accounts, without penalty, the evidence supported the finding that Wife could not do so without reducing the

forced to reduce her principal. Indeed, as discussed *infra,* the evidence supporting the trial court's ruling was from Wife's expert,

who testified that Wife could not withdraw interest income from her IRAs, without penalty, without risking reduction of her *principal.*

principal of her accounts. And, as set forth above, Wife is "not required to consume . . . her apportioned share of marital property before receiving maintenance." *Novak,* 83 S.W.3d at 601. Regarding the parties' intentions, in her deposition, Wife testified that she intended to use the money in her IRA accounts for her retirement. Wife was only fifty-three at the time of trial. Had Wife been required to begin receiving payments from her IRA accounts immediately, rather than at her retirement, Wife would have less available for income during her retirement. Additionally, once Wife reached the age of fifty-nine and a half, the Internal Revenue Code sections at issue would no longer apply, permitting Wife to make withdrawals without the risk of reducing the assets of her IRAs. The marital property and debts were divided equally, with each party receiving property with a net worth of $1,433,485. Since the date of the original decree, however, the value of Wife's IRAs decreased from $960,843, the value when awarded, to $672,468, due to the downturn of the stock market. Additionally, Wife reasonably expended approximately $215,000 of her $362,500 cash equalization payment from Husband to purchase and renovate a new residence. On these facts, the trial court's judgment allows Wife to maintain funds in her established IRA accounts to use during her retirement rather than requiring her to reduce such funds to provide for her current needs. *See id.* at 602. Considering Wife's current age and the fact that it is unlikely she could accumulate retirement funds from her income of $3974 per month or any other source, the trial court did not abuse its discretion in refusing to impute income from Wife's IRA accounts to Wife.

In sum, the trial court specifically considered the payments Wife could receive from the IRA accounts awarded to her as marital property in calculating mainte-

nance, as directed by *Hill.* There was evidence that Wife would be forced to reduce the principal of her IRA accounts if she attempted to prematurely withdraw income from them prior to age fifty-nine and a half. Because of Wife's "intent as to . . . retirement[,]" and the principle that a spouse is not required to consume "her apportioned share of marital property before receiving maintenance[,]" the trial court did not abuse its discretion in declining to impute Wife's IRA income to her. *Hill,* 53 S.W.3d at 116. Accordingly, the trial court did not err in awarding Wife maintenance in the amount of $688 per month. Husband's points challenging the award of maintenance are denied.

### No Error In Awarding Maintenance Payable From Date of Original Judgment

In two points on appeal, Husband challenges the trial court's award of what he characterizes as "retroactive" maintenance. Specifically, Husband asserts the trial court erred in awarding Wife maintenance retroactive to the date of the trial court's original judgment. Husband claims that maintenance awards, which are governed by section 452.335, cannot be awarded retroactively. Moreover, Husband contends that, because Wife did not request temporary maintenance after this court remanded the cause in *Cohen I,* Wife was not entitled to retroactive maintenance. In another point, Husband claims the trial court erred in ordering that the $18,400 he paid to Wife in maintenance while the first appeal was pending be applied as a credit against his total retroactive maintenance. In particular, Husband asserts that because the award of "retroactive" maintenance was improper, the $18,400 he paid pursuant to the trial court's original judgment should have been refunded to him.

" '[A] divorce decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.' " *Browning v. Browning,* 947 S.W.2d 106, 108 (Mo. App.1997) (citation omitted). "The burden of demonstrating error is on the party challenging the divorce decree." *Id.*

 Husband correctly argues that "[s]ection 452.335 speaks prospectively, not retrospectively; therefore, a maintenance award ordered in the judgment of dissolution cannot be made retroactive." *Colquitt v. Muhammad,* 86 S.W.3d 144, 148 (Mo. App.2002). The facts and circumstances of this case, however, call into question whether the maintenance awarded by the trial court can properly be characterized as "retroactive." In general, a prohibited retroactive maintenance award is an award that is made retroactive from the date of the trial court's initial judgment. *See, e.g., id.* at 149–50 (wife entitled to maintenance award retroactive from date of judgment to date of filing pendente lite motion, but not from date of service on husband). In other words, a prohibited retroactive maintenance award is an award of maintenance from the date of the trial court's *initial* judgment *backwards* to another point in time. A maintenance award is not properly characterized as "retroactive" when the maintenance award is made on remand and applicable to the period from the date of the original judgment to the date of the judgment on remand.

The facts of this case are similar to circumstances in *N.M.O.,* 117 S.W.3d at 729. In *N.M.O.,* the trial court's initial judgment awarded the wife significant maintenance and child support, which the husband appealed. *Id.* at 729. While the appeal was pending, the trial court entered a judgment finding the husband in contempt of court for not making the

maintenance payments. *Id.* at 729–30. The husband then appealed the trial court's decision finding him in contempt. *Id.* at 730. On July 15, 2003, the appellate court reversed the trial court's "award of maintenance and remanded the matter for reconsideration to permit the trial court to consider the potential income from retirement and IRA accounts awarded to [the wife.]" *Id.* A separate appellate court panel heard the husband's appeal of the trial court's decision finding him in contempt of court. *Id.* The court found that, because of the July 15, 2003 opinion, the husband could not be held in contempt of court because he was "not presently under any obligation to pay maintenance and thus cannot be found in contempt for failure to pay maintenance." *Id.* This court vacated the trial court's judgment finding the husband in contempt, but noted that its "decision reversing and remanding the maintenance award leaves open the possibility that the trial court may still award substantial maintenance or even the same amount of maintenance, *retroactive to the date of the original award.*" *Id.* at 730 n. 2 (emphasis added).

Similarly, in *Comninellis v. Comninellis,* 147 S.W.3d 102, 112–14 (Mo.App.2004), the trial court entered its original decree, which did not award the wife any maintenance on November 14, 2001. Both parties appealed the trial court's initial judgment and, following remand from this court, on October 15, 2003, the trial court entered a judgment awarding maintenance to the wife retroactive to the date of the mandate from the court of appeals from the first appeal. *Id.* at 113. On appeal of the trial court's second judgment, the wife argued that she was entitled to maintenance from the date of the original judgment, not the date of this court's mandate. *Id.* This court agreed, holding that "the award of maintenance will run *prospectively* from the date of the original dissolution

decree." *Id.* at 114 (emphasis added). *See also Clarke v. Clarke,* 983 S.W.2d 192, 194–95 (Mo.App.1998).

Here, the trial court entered its original judgment in this case awarding Wife maintenance of $800 per month on May 25, 2000. Husband complied with the trial court's original judgment, paying Wife $18,400 in maintenance until April 23, 2002, the date this court reversed the maintenance award and remanded the case back to the trial court to determine whether Wife's IRAs were "income producing, and, if so, whether any amount should be imputed therefrom[.]" *Cohen I,* 73 S.W.3d at 49. On remand, the trial court awarded Wife monthly maintenance of $688 per month. The trial court specifically made this award applicable from June 1, 2000, the date maintenance was due under the original judgment.

Like in *N.M.O.* and *Comninellis,* the trial court did not award Wife "retroactive maintenance" in the prohibited sense but, rather, awarded Wife maintenance "prospectively from the date of the original dissolution decree." *Comninellis,* 147 S.W.3d at 114. Consequently, the trial court did not err in awarding Wife maintenance in the amount of $688 per month prospectively from the date of its initial judgment, or June 1, 2000. Because the trial court did not err in awarding Wife maintenance from June 1, 2000, Husband was entitled to a credit of $18,400, the amount he paid in satisfaction of the trial court's original judgment, against the total maintenance Husband owes. Husband's points challenging the effective date of the award of maintenance are denied.

### Error in Awarding Interest on Maintenance Award

■ In another point on appeal, Husband asserts the trial court erred in awarding Wife interest on her award of maintenance from June 1, 2000, the effective date of the original award of maintenance. Specifically, Husband argues that maintenance awards are based entirely in statute and that the relevant statute, section 452.335, contains no provision for interest on retroactive maintenance awards.

As set forth above, " '[p]rovisions in a divorce decree will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.' " *Browning,* 947 S.W.2d at 108 (citation omitted). Husband, as the party challenging the provision of the decree awarding interest, bears the burden of demonstrating error. *Id.*

In this case, the trial court entered its original judgment awarding Wife monthly maintenance of $800, effective June 1, 2000. Husband complied with the trial court's original judgment, paying Wife a total of $18,400 in maintenance until April 23, 2002, when this Court reversed the trial court's judgment and remanded the case back to the trial court. From April 2002 until the trial court entered its new judgment on October 23, 2003, Husband did not make any maintenance payments to Wife. The trial court's October 2003 judgment ordered Husband to pay $688 per month in maintenance, to be applied retroactively to June 1, 2000. The trial court further ordered that Husband was entitled to a credit in the amount of $18,400, based on the amount he already paid. In addition, the trial court ordered that "[a]ny maintenance due after the $18,400 credits applied shall be paid forthwith, with statutory interest." [4]

It is undisputed that Husband paid Wife maintenance of $800 per month between

---

4. The trial court's judgment also states, in paragraph XXI, that the $27,831 Wife is or-

dered to pay for failing to deliver property to Husband can be used to "offset any arrearage

date of the trial court's original judgment and this court's decision in *Cohen I* in April 2002. Husband's total payments during this time totaled $18,400. Moreover, Wife does not claim that Husband failed to make his required maintenance payments after the trial court's October 2003 judgment, which ordered Husband to pay $688 per month in maintenance. Thus, the maintenance payments at issue, here, that would be subject to statutory interest under the trial court's judgment are the payments due for the eighteen month period of time between this court's April 2002 decision in *Cohen I* and the trial court's October 2003 judgment.

Husband correctly argues that section 452.335, which governs awards of maintenance, does not authorize an award of interest. Nevertheless, Wife claims that the trial court did not err in granting statutory interest on the maintenance award retroactive to the date of the trial court's original judgment because section 454.520 requires that interest be awarded on all delinquent maintenance payments.[5] Underlying Wife's argument is the assumption that if Husband were to pay the eighteen monthly payments of $688 after the trial court entered its judgment on October 23, 2003, but the payments were for Husband's monthly maintenance during the time period from April 2002 until October 2003, the payments would necessarily be "delinquent."

Wife's assertion, however, is mistaken. A required payment is not "delinquent" unless one who is obligated to make the payment fails to do so by the appointed time. BLACK'S LAW DICTIONARY 460 (8th ed.2004). When this court reversed and remanded the trial court's maintenance award in *Cohen I* in April 2002, thereafter, and until the trial court issued its new judgment on October 23, 2003, Husband was under no obligation to pay maintenance. *N.M.O.*, 117 S.W.3d at 730 n. 2 (following appellate court reversal of maintenance award, "until the trial court enters a new judgment on remand, Husband is under no present obligation to pay maintenance"). Because Husband had no obligation to make maintenance payments from April 2002 until October 2003, Husband's maintenance payments covering this time period could not have been properly classified as delinquent at the time the trial court issued its new judgment. Accordingly, the trial court's award of statutory interest on the maintenance award from June 1, 2000, was without basis. Consequently, the trial court erred in awarding Wife statutory interest on any maintenance due after the $18,400 credit.[6] Husband's point is granted.

Nevertheless, because the trial court's error is not so significant to require remand, the trial court's judgment is modified by this court, pursuant to Rule 84.14, to enter the judgment the trial court should have entered. In particular, the trial court's judgment is modified to pro-

---

in maintenance and interest to 10/01/03 and balance shall be paid thereafter." This language, coupled with the language ordering interest, indicates the trial court contemplated that interest would accrue from the date of the original judgment.

5. Section 454.520.3 provides: "All delinquent child support and maintenance payments which accrue based upon judgments of courts of this state entered on or after September 1, 1982, shall draw interest at the rate of one percent per month."

6. However, the trial court expressly stated that the maintenance for the period of June 1, 2000, to October 23, 2003, less the $18,400 credit, was due and payable on the date of judgment. If payment was not made in full on that date, Wife is entitled to interest, under section 454.520.3, for any unpaid or delinquent amount.

vide that statutory interest is due on any amount delinquent after October 23, 2003.

## No Abuse of Discretion in Award of Attorney's Fees For Circuit Court Proceedings

In his next point on appeal, Husband claims the trial court abused its discretion in granting Wife $9000 in attorney's fees for the circuit court proceedings. Husband similarly challenges the trial court's award of $8500 in attorney's fees to Wife on appeal. In both cases, Husband claims Wife had sufficient financial resources from which to pay her attorney's fees, including employment income of $44,000 a year, liquid assets in excess of $208,600, and IRA income of $13,300 annually. In addition, Husband contends the trial court failed to properly consider that Wife had "willfully and contemptuously" refused to deliver to him property valued at $27,831, which the trial court awarded him in its original judgment and other conduct Husband characterizes as "highly improper[.]" Wife, on the other hand, in her second point on cross appeal, asserts the trial court erred in awarding her only $9000 in attorney's fees for the circuit court proceedings. Specifically, she claims that the disparity in both income and earning capacity between herself and Husband is so great that the trial court abused its discretion in failing to award her a greater amount of her attorney's fees.

"The trial court is, of course, an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate." *Taylor v. Taylor*, 25 S.W.3d 634, 649 (Mo.App.2000). "The trial court's decision as to a request for award of attorney's fees is presumptively correct." *Cohen I*, 73 S.W.3d at 56. "This court will not reverse a trial court's decision as to an award or denial of attorney's fees pursuant to [section] 452.355,

unless we find that the court abused its discretion." *Id.* An abuse of discretion occurs if "the award was clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of deliberation." *Clark v. Clark*, 101 S.W.3d 323, 330–31 (Mo.App.2003).

Missouri law permits, but does not require, the trial court to award attorney's fees in a dissolution case. *Cohen I*, 73 S.W.3d at 56. Under section 452.355:

Unless otherwise indicated, the court from time to time after considering all relevant factors including the *financial resources of both parties,* the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment.

(Emphasis added).

■ Husband first claims the trial court abused its discretion in awarding Wife the attorney's fees because Wife had sufficient financial resources to pay her legal expenses, including employment income of $44,000 a year, liquid assets in excess of $208,600, and IRA income of $13,300 annually. First, as discussed above, this court has ruled contrary to Husband's claim that the $13,300 annual income from Wife's IRAs is available to her. Secondly, by solely focusing on Wife's assets, Husband's argument "misconstrues the law." *Cohen I*, 73 S.W.3d at 56. In Missouri, the court is required "to look at *both* parties' financial resources in determining the reasonableness of an award of attorney's fees." *Id.* "[T]he fact

that a spouse has the means to pay his or her attorney's fees does not preclude an award for payment of the same." *Id.* "'One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse.'" *Id.* (citation omitted).

Here, Husband had the greater ability to pay. Even though the trial court divided the marital estate equally, Husband has substantially greater income than Wife. Husband's annual income is $245,000, compared to Wife's income of $44,000. Monthly income is a relevant factor in "assessing the propriety of an award of attorney['s] fees." *Adair v. Adair*, 124 S.W.3d 34, 41 (Mo.App.2004). The undisputed and significant disparity in the parties' incomes "was a sufficient basis for the trial court's award of attorney's fees and as such, there is nothing to suggest that the court did not consider [Husband's] financial resources when making its award." *Cohen I*, 73 S.W.3d at 56.

Wife, nevertheless, seizes upon the disparity in the parties' income to counter-argue, in her second point on cross appeal, that the trial court should have awarded her *more* in attorney's fees for trial. Wife's argument, however, ignores "the fact that one spouse's income is greater than the other's does not compel an award of attorney's fees." *Stidham v. Stidham*, 136 S.W.3d 74, 83 (Mo.App.2004). Here, the trial court awarded Wife $9000 in attorney's fees for the circuit court proceedings, even though it had no obligation to award Wife any attorney's fees. The trial court found Wife's requested attorney's fees for trial of $24,500 to be excessive. An award of $9000 in attorney's fees does not shock this court's sense of justice.

Finally, Husband claims the trial court abused its discretion in awarding Wife attorney's fees because it failed to properly consider Wife's refusal to deliver to him property valued at $27,831, which was awarded to him in the trial court's original judgment, and other conduct by Wife. Husband argues that Wife's refusal to deliver the property should, itself, have prevented the trial court from awarding Wife attorney's fees because Wife's conduct showed a "lack of respect for the [t]rial court's authority" and forced him to initiate a contempt action, which led to increased attorney's fees and costs.

Husband's argument, however, fails to acknowledge that, under Missouri law, the trial court must consider "all relevant factors" in determining whether an award of attorney's fees is justified. Section 452.355. The behavior of the parties is but one factor that may be relevant. *Stidham*, 136 S.W.3d at 83. When all relevant factors are considered, including the financial resources of both parties, the trial court's decision is within its discretion.

Moreover, this case is one in which the conduct of both parties have contributed to increased legal fees. When addressing the issue of attorney's fees in *Cohen I*, this court stated that, even assuming Wife had engaged in conduct that increased Husband's legal fees, there was a "counterbalancing consideration with respect to the [Husband's] conduct during the proceeding." *Cohen I*, 73 S.W.3d at 57. While Wife's conduct may be a factor that weighs against the trial court's judgment granting her attorney's fees, Wife's conduct itself does not preclude the trial court from ordering Husband to contribute to Wife's attorney fees. This court finds "no basis for rebutting the presumption that the trial court properly considered all relevant factors in entering its award of attorney's fees" for Wife. *Id.* Neither the trial court's $9000 award of attorney's fees for the circuit court proceedings, nor the trial court's

$8500 award of attorney's fees to Wife on appeal, offends this court's sense of justice. Husband's and Wife's points challenging the awards of attorney's fees are denied.

In another point on appeal, Husband asserts the trial court erred in failing to award him attorney's fees for prevailing on his motion for contempt.[7] Specifically, Husband claims the trial court incorrectly determined that it could not award Husband attorney's fees because Husband failed to present evidence regarding the amount of attorney's fees. Husband claims the trial court misconstrued the law regarding awarding attorney's fees because "the trial court is an expert on the issues [sic] of attorney's fees and may independently determine such an award[.]" Thus, Husband concludes, that even though he did not present any evidence regarding attorney's fees associated with his motion for contempt, the trial court, being an expert on the issue of attorney's fees, should have nevertheless awarded him attorney's fees. This court reviews the trial court's decision regarding attorney's fees for an abuse of discretion, as previously set forth in Section V. *Cohen I*, 73 S.W.3d at 56.

While Husband correctly states that the trial court is considered "an expert on the issue of attorney's fees and may independently determine and award such fees as it deems appropriate," Husband misconstrues the trial court's finding on this issue. *Taylor*, 25 S.W.3d at 649. Husband contends the trial court's "interpretation of the law" is found in the court's October 7, 2003 "Findings of Fact and Conclusions of Law."[8] Specifically, Husband claims the trial court found that Husband lacked specific evidence of fees and, therefore, the trial court believed it was "disqualified" "from making any award." The trial court's October 7, 2003 "Findings of Fact and Conclusions of Law[,]" however, made no such finding. Rather, the trial court specifically found: "Attorney fees to defend Motion for Contempt should be awarded [Husband] as he prevailed, but [Husband] appears to abandon that request." The trial court's language demonstrates that its decision not to award Husband attorney's fees was not based on Husband's failure to present evidence of the amount of attorney's fees involved but, rather, on Husband's abandonment of his claim for attorney's fees.

The record at trial supports the trial court's finding that Husband abandoned his claim for attorney's fees. Husband made the following statements under direct examination by his own counsel:

Q: *You're asking that each party be required to pay their own attorney's fees and costs?*

A: *Correct.*

Q: Dr. Cohen, you've had to incur attorney's fees as a result of the items being missing from the home that you went back into; is that correct?

A: Correct.

---

7. Even though this court dismisses Wife's first point on her cross appeal because the order is interlocutory and not appealable, see discussion *infra*, an award of attorney's fees is not part of the contempt order and, therefore, Husband's point is appealable. *In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 782–83 (Mo. banc 2003). *See also City of Pagedale v. Taylor*, 790 S.W.2d 516, 518 (Mo. App.1990) (award of attorney's fees in civil contempt cases "is not a portion of the civil contempt order itself").

8. On October 7, 2003, the trial court issued its "Findings of Fact and Conclusions of Law," from which it instructed Husband's counsel "to provide full judgment for all issues incorporating these findings and conclusion in proper form, within 15 days." Thereafter, on October 23, 2003, the trial court issued its final judgment in this case.

Q: And you are also asking for a judgment of contempt against Ms. Cohen with a judgment against her in money for the amount of items that were gone from the home that were awarded to you; is that correct?

A: Yes.

Q: And you had to incur attorney's fees to do that; is that correct?

A: Yes.

(Emphasis added).

One interpretation of the above exchange is that Husband abandoned his claim for attorney's fees on all issues except the issue of contempt. Another equally plausible interpretation, however, is that Husband was asking that the parties pay their own legal fees on all of the issues. Both interpretations are supported by the exchange. The trial court, in its discretion, believed the latter. "The judgment of the trial court is entitled to deference even if the evidence could support a contrary conclusion." *Greiner v. Greiner,* 146 S.W.3d 442, 445 (Mo.App. 2004). Because Husband testified that he wanted each party to pay their own attorney's fees, it cannot be said that the trial court abused its discretion in failing to award any fees to Husband. Husband's point is denied.

### The Trial Court Did Not Err in Failing to Include IRA Income in Child Support

■ In another point on appeal, Husband asserts the trial court erred in calculating child support because the court failed to consider the amount of income Wife can withdraw from her IRA accounts, without penalty, in calculating Wife's income. As Husband acknowledges, however, his argument under this point is the same argument he made with respect to the trial court's failure to impute income to Wife from her IRA accounts when determining whether she was entitled to maintenance. As such, the same reasoning this court applied previously is applicable to Husband's argument here. In particular, the trial court properly found that Wife could not withdraw income from her IRAs without reducing the assets of her IRA accounts. Consequently, the trial court did not abuse its discretion in refusing to impute such income to Wife for purposes of calculating child support. Husband's point is denied.

### Error in Calculating Husband's Child Support Obligation

■ In his next point on appeal, Husband claims the trial court erred in calculating child support because the court improperly assigned Husband $23,096 per month in gross income on the Form 14 when "the trial court's own findings and the evidence presented" indicated Husband's monthly income was $20,416. This court reviews a trial court's Form 14 calculation "to ensure the calculation was done accurately from a mathematical standpoint and that the various items and their amounts were included in the calculation and supported by substantial evidence." *Lagermann v. Lagermann,* 109 S.W.3d 239, 245 (Mo.App.2003).

The first question that must be addressed is whether the trial court had sufficient evidence to support its finding that Husband's monthly gross income was $23,096. In the trial court's judgment, it found that Husband has an earning capacity of $245,000 or more per year. A yearly amount of $245,000 amounts to $20,416 per month. While the trial court's finding does state "or more[,]" there is no evidence that Husband has made more than this in the recent past or will make more than $245,000 per year in the immediate future. The facts of this case support a finding that Husband could make up to

$245,000 per year or $20,416 per month. The trial court's use of the figure $23,096 per month reflects an income of $277,152 per year. There is no substantial evidence for using this number. Thus, the trial court erred by using $23,096 as Husband's monthly gross income.

The second question that must be addressed is what effect this error had on the Form 14 calculations. The trial court assigned gross monthly income of $23,096 to Husband and gross monthly income of $3974 to Wife, for a combined adjusted gross monthly income of $27,070. The trial court used this number to determine the amount of basic child support due. According to Missouri Supreme Court Form 14 Schedule of Basic Child Support Obligations, when parties have combined adjusted monthly gross income of $20,000 or more, the basic child support amount for one child is $1835.[9] The amount does not increase regardless of how much more than $20,000 per month the parties may earn.

Thus, as Wife argues, whether the trial court used $20,416 or $23,096 as Husband's gross monthly income, the parties' combined adjusted monthly gross income would be greater than $20,000. Therefore, the basic child support amount would be $1835, regardless of which figure the trial court used for Husband's monthly gross income.

While the amount of monthly gross income attributed to the parties does not affect the basic child support amount, it does impact the proportionate share of combined adjusted monthly gross income. Here, Husband was found to have $23,096 in monthly gross income. He was given a credit of $688 per month for maintenance. Thus, Husband was found to have $22,408

in adjusted monthly gross income. Wife was found to have $3974 per month in gross income. She was assigned an additional $688 per month for maintenance. Thus, Wife was found to have $4662 in adjusted monthly gross income. With these calculations, the combined adjusted monthly gross income of both the parties would be $27,070. Husband's portion would be $22,408 divided by $27,070 or 82.7%. However, if the trial court used $20,416 per month, as Husband claims it should have, Husband's adjusted monthly gross income would be $19,728. Husband's portion of the basic child support amount would be 80.8%, reached by dividing $19,728 by the adjusted monthly gross income of $24,390. Consequently, while the total combined child support costs would remain the same, the percentage Husband was responsible for would decrease from 82.7% to 80.8%. Instead of being found to owe $1,823 per month (after additional child rearing costs and adjustments) in presumed child support, Husband would owe $1,778 per month. The trial court erred in finding that Husband owed $1,823 per month in presumed child support. Husband's point is granted.

Since the trial court's error is not so significant to require remand, the trial court's judgment is modified by this court, pursuant to Rule 84.14, to enter the judgment the trial court should have entered. In particular, paragraph XVI should be modified to replace child support awarded of $1,823 per month with $1,778 per month.

## IX. Order Finding Wife in Contempt Not Final

■ In her cross appeal, Wife asserts the trial court erred in finding her in

9. Since the trial court's judgment, the Schedule of Basic Child Support Obligations has been updated. For example, as of July 1, 2005, the basic child support amount for a combined adjusted monthly gross income of $20,000 for one child is $1609.

contempt of court "because a bailee/bailor relationship was never established and the evidence presented did not support a finding of contempt[.]" Specifically, Wife claims the evidence demonstrated that she had the marital assets in the marital home inventoried and accounted for by a third party before she moved out of the marital home. She also claims that the evidence establishes that, after she left the home, she turned her house keys over to her attorney and never returned or had access to the marital home again.

On Husband's motion for contempt, the trial court found Wife in contempt for failure to deliver certain property ordered transferred to him in the trial court's original judgment. The trial court specifically found Wife "indebted to [Husband] for $27,831.00 and while in contempt of Court, for said non-delivery, punishment is appropriate only as to the value of these items. Judgment for $27,831.00 against [Wife] for [Husband] and same may offset any arrearage in maintenance and interest to 10/01/03 and balance shall be paid thereafter."

This court is "obligated to consider, sua sponte, the propriety of our jurisdiction over the contempt order, even though neither party raises it as an issue." *21 West, Inc. v. Meadowgreen Trails, Inc.*, 913 S.W.2d 858, 883 (Mo.App.1995). "An order finding a party in contempt is interlocutory in nature and is not appealable until it has been enforced." *Bailey v. Amon*, 941 S.W.2d 657, 658 (Mo.App.1997). "When 'enforcement' occurs depends on the remedy." *In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 781 (Mo. banc 2003). A "contempt order is 'enforced' when the moving party executes" on it, or, in the case of imprisonment, when an order of commitment is issued. *Id.* at 781.

Here, the record fails to show that Husband attempted to enforce the court's or-

der of contempt. Consequently, the court's order finding Wife in contempt is interlocutory and, therefore, is not appealable. *Bailey*, 941 S.W.2d at 658. Accordingly, Wife's point is dismissed, without prejudice.

### Conclusion

The trial court erred in awarding Wife interest on the award of maintenance retroactive to the date of the trial court's original judgment. Accordingly, the judgment is modified by this court, under Rule 84.14, to enter the judgment the trial court should have entered. In particular, the trial court's judgment is modified by amending paragraph XX, to read, "Any maintenance due after the $18,400.00 credits applied shall be paid forthwith, with statutory interest on any delinquent amounts from the date of the October 23, 2003 judgment" and, as so modified, is affirmed. Similarly, Husband's child support obligation is modified under Rule 84.14 to reflect that the correct child support Husband is to pay is $1778 per month. In addition, because the trial court's order finding Wife in contempt is interlocutory and, therefore, not appealable, Wife's first point on cross appeal is dismissed, without prejudice. The judgments are affirmed in all other respects.

All concur.